KERR–McGEE OIL INDUSTRIES, INC.,
a corporation, Own Risk, Petitioner,

v.

Harry E. MAPES and State Industrial Court,
Respondents.

No. 40494.

Supreme Court of Oklahoma.

Sept. 17, 1963.

Kerr, Conn & Davis, Walter Hentz, Oklahoma City, for petitioner.

George E. Fisher, Robert H. Reynolds, Oklahma City, for respondent.

JACKSON, Justice.

This is an original proceeding in this court to review an award of the State Industrial Court to claimant Harry E. Mapes for disability due to occupational disease.

Claimant was employed for about sixteen and one half years at the Kerr-McGee oil refinery at Wynnewood. During much of that time his position was that of "trapman". From the evidence, it appears that waste oil and other substances are gathered through a system of sewers or ditches from all parts of the refinery and run through a series of "traps", after which the reusable oil is separated from the waste substances and re-run through the refinery. Some of the "traps" and ditches are open, and as the waste substances pass at high temperatures, they give off noxious gases

and vapors, which escape into the air. Claimant's job as "trapman" required him to be in and about the gathering points and open traps, and it was his theory that his breathing of the odorous fumes and gases arising from the hot waste substances caused or aggravated conditions described by the medical witnesses as pulmonary fibrosis and pulmonary emphysema. The trial judge entered an award for claimant which was sustained on appeal to the Court en banc, and petitioner Kerr-McGee appeals, arguing two propositions in this court.

The first is to the general effect that the trial court's finding is not supported by any competent evidence.

Under this proposition, petitioner first argues that the testimony of claimant's medical witness is so indefinite, ambiguous and contradictory as to have no probative value, and is therefore insufficient to support the award.

The precise testimony concerned was as follows:

"THE COURT: Alright. In his testimony he said he kept working with this condition, this known condition till he had this eye trouble and then, in a couple of weeks, he had to quit work because of this eye—this may not be a question that you can answer, but since you are a medical man I am going to ask it. From what you said about his history and what you just got through saying about one day older and going down hill. Anyhow, in your opinion, if it hadn't been for this eye injury, how long could he have worked having been exposed to these fumes and having worked right along for three years, would it ever have gotten, in your opinion, where he couldn't work at all?

"A. Yes sir.

"THE COURT: But, of course, you have no idea when?

"A. No. sir.

"THE COURT: Are you saying his condition today, being totally disabled, is from this, or the combination of the eye condition and this?

"A. I could answer that this way. In my mind, if his blind eye was good, he would still be totally disabled for ordinary manual labor."

On the basis of the above quoted portion of the record, petitioner argues that claimant's doctor testified in one breath that claimant might become disabled at some unknown future date, and in the next that that claimant was *presently* disabled.

■ We do not so construe the testimony. The question addressed to the witness by the court was long and involved and perhaps confusing, and it has some of the characteristics of a purely hypothetical question. That the trial judge himself did not construe the doctor's second answer ("No, sir") as a denial of present disability is indicated by the next question of the judge: "Are you saying his condition today, *being totally disabled,* * * * *". Considering the quoted testimony, and the other testimony, of the doctor as a whole, we hold that it was not so indefinite, ambiguous and contradictory as to be without probative value.

■ Petitioner also argues under this proposition that the evidence conclusively shows that claimant quit work because of an eye condition, and not because of the disability resulting from the occupational disease. It may be conceded that there is considerable support in the record for this argument, and that the eye condition may actually have been the immediate cause of claimant's leaving his employment. We find this immaterial in the instant case. The issue before the court was the existence of an occupational disease arising from claimant's employment, and it was not necessary for claimant to show the happening of an "accidental injury" as that term is ordinarily used in a workmen's compensation case in which an occupational disease is not involved. 58 Am.Jur. Workmen's Compensation, Sec. 246.

The second proposition is that the finding of the State Industrial Court is not supported by any competent evidence because the evidence fails to disclose that the waste oil and substances around which the claimant worked contained the noxious substances in *sufficient quantities* to produce the results testified to.

 In National Zinc Company v. Hainline, Okl., 360 P.2d 236, this court held:

> "The question of what constitutes a 'hazardous exposure' to toxic materials and elements enumerated in 85 O.S. Supp., 1957, Sec. 3, Sub-division 16, must be determined by their harmful effect upon the individual workman *rather than by the quantity of the noxious substance present,* and a finding made on such issue by the State Industrial Court will not be disturbed on review when reasonably supported by competent evidence." (Emphasis supplied.)

Under the above rule, it was not necessary in this case for the evidence to show the quantities of the noxious substances present. The petitioner argues, however, that National Zinc Co. v. Hainline is distinguishable because the opinion in that case shows that " * * * the toxic metals were present everywhere in the dust in appreciable and *measurable quantities*" (emphasis supplied). However, we find similar evidence in the record in this case. The report of a chemist who analyzed samples of waste substances from the refinery shows, among other things, that " * * * There was a *measurable* amount of $CS_2$ in this fraction * * *" (emphasis supplied). Poisoning by Carbon Bisulphide is one of the diseases deemed to be occupational diseases under the terms of 85 O.S.1961 § 3(16). The report of another analytical chemist showed the presence of five of the substances listed in 85 O.S.1961 § 3(16). These reports were available to, and had been examined by, the medical witnesses testifying in this case.

We find that there is competent evidence reasonably tending to support the award in this case, and it will therefore not be disturbed. Oklahoma Natural Gas Co. v. White, 187 Okl. 627, 105 P.2d 225.

The award is sustained.