**BLACKWELL ZINC COMPANY, Inc.,**
Petitioner,

v.

Donald C. PARKER and the State Industrial
Court, Respondents.

No. 40449.

Supreme Court of Oklahoma.

June 15, 1965.

Rehearing Denied July 13, 1965.
Application for Leave to File Second
Petition for Rehearing Denied
Oct. 12, 1965.

C. D. Northcutt, Felix Duvall, Ponca City, for petitioner.

Russell Farmer, William A. Kerr, Carl E. Moslander, Charles R. Nesbitt, Atty. Gen., Oklahoma City, for respondents.

IRWIN, Justice.

The award under review grants claimant compensation for permanent total disability from occupational aggravation of a pulmonary disease. The principal question for decision is whether there was error in the trial tribunal's finding by whose terms June 26, 1956, stands adjudged as the date of claimant's last hazardous exposure to certain irritants at employer's zinc processing plant. According to employer's contention the record compels a finding that after May 6, 1955, "nothing did occur * * * sufficient, either in fact or law, to amount to any 'exposure'" and the claim in question,

filed December 4, 1956, was barred by one-year limitation period.

This is the second appeal in this cause. The trial tribunal's initial disposition, which formed the basis for the first appeal adjudged the claim barred by statutory limitation upon finding May 6, 1955, as the date of claimant's *"last disabling exposure"*. On review this court pronounced that the controlling one-year limitation period of Sec. 2, H.B. 612, S.L.1953 p. 430, 85 O.S.Supp. § 43 began to run from the last *hazardous* rather than the *last disabling exposure*. Inasmuch as the trial tribunal's order did not contain a determination of this pertinent date, its decision was vacated and the proceeding remanded for appropriate findings. See, Parker v. Blackwell Zinc Company, Okl., 325 P.2d 958. At a hearing held subsequent to the remand claimant presented additional evidence. The trial tribunal's second decision, now under review, adjudges June 26, 1956 as the date of claimant's last hazardous exposure to "fumes, vapors, smoke and dust containing chemicals used in the production of zinc" and determines the claim, filed December 4, 1956, to have been timely instituted.

Claimant became employed at the plant in 1943. He left employer's service on October 20, 1956. From 1943 until May 6, 1955, he was engaged as a mill or metal drawer. Throughout this time he was in direct contact with fumes, vapor and smoke emanating from zinc processing furnaces. From September 1955 until the end of his employment in October 1956 he was engaged as an attendant at the entrance gate to the smelter premises. The entrance gate was located approximately 600 feet from the furnace area.

Claimant's respiratory complaints had their inception about the middle part of October 1953 when he suddenly began to experience shortness of breath, with pain in his chest. He was hospitalized for a week with a diagnosis of pleurisy. After two weeks of absence he returned to his regular work as a metal drawer, but was unable to carry out the duties of that job. Dr. R,

consulted by claimant in November, 1953, diagnosed the ailment as "chronic pneumonitis, upper lobe, right lung." Another physician, Dr. C, later identified the disease as "aspiration pneumonia" due to inhalation of dust and particulate matter while employed in an atmosphere charged with such substance. In February, 1954 claimant returned to duty at the plant and to his work as a metal drawer. Late in 1954 he began "to raise a small amount of sputum" and to experience "occasional episodes of chills and febrile periods suggesting a progression in the chronic inflammation of his lung." During the forepart of 1955 he became progressively worse. After May 6, 1955, he was no longer able to work. He was absent from work until September of that year.

In the latter part of May, 1955 claimant underwent surgery for the removal of the upper lobe of his right lung. Microscopic sections of the excised lobe revealed old tuberculous lesions from an infection contracted earlier in life and already fully healed. This condition was entirely unrelated to any active disorders claimant was then suffering. Dr. R, who performed the operation, diagnosed claimant's disease as "interstitial pulmonary fibrosis and bullous emphysema." He attributed it directly "to occupational factors of long standing pulmonary irritation from breathing the fumes and smoke" emanating in the course of processing zinc.

At issue here is the sufficiency of claimant's undisputed evidence to establish the factum of the last hazardous exposure on June 26th. The occupational etiology of claimant's condition is not in dispute. Employer asserts that claimant's alleged exposure to smoke while working in open air as a gate attendant bore no "reasonable relation in time, place and conditions" to the original hazard of the furnace department and the record does not show by medical evidence, any detrimental effect "of a whiff of smoke" inhaled by claimant on June 26, 1956, when he lost only one hour from work.

As we view this argument, it rests on the assumption that the "last hazardous expo-

sure" to the causative force of the harm must be perceptibly pathogenic and be of itself sufficient to effect disability. This is patently untenable. The injurious consequences of exposure are the product of gradual development extending over a *period* of time rather than the result of a *point* of time. No one particular exposure may be singled out and be regarded as responsible for the disease or any part thereof. It can only be said that the *aggregate exposures* resulted in harm. In short, the disability culminates from the cumulative effect of a prolonged exposure rather than from a series of individual exposures. Associated Indemnity Corporation v. State Industrial Accident Commission, et al., 124 Cal.App. 378, 12 P.2d 1075, 1076; Marsh et al. v. Industrial Accident Commission of California, 217 Cal. 338, 18 P.2d 933, 935, 86 A.L.R. 563. In the case first cited the court pointed out that "any one exposure to the deleterious substance is inconsequential in itself, but the accumulation of repeated absorptions is the factor which brings about the disease." See also, Johnson v. Industrial Accident Commission, Cal. App., 157 Cal.App.2d 858, 321 P.2d 856, 857.

▮▮▮▮ The occupational disease amendment to the Workmen's Compensation Act does not require that the ultimate or any particular exposure be in itself disabling or consist of a discrete injurious episode which perceptibly furthers the progression of a pre-existing condition or the course of a disease. By dictionary definition the term "hazardous exposure" means merely the state of being accessible or laid bare to the risk or potential of detriment. Webster's New International Dictionary, Second Edition. The risk of detriment, or the hazardous character of exposure, must be determined by the harmful effect the substance which constitutes the causative force of the disease (or of the aggravation of a pre-existing condition) may have on an individual workman, rather than by the quantity of noxious ingredients present in that substance. What may be, medically speaking,

harmful to one person is not necessarily pathogenic to another. The law may not be so blind to science as to adopt a purely objective standard for determining "hazardous exposure". National Zinc Co. et al. v. Hainline, Okl., 360 P.2d 236, 240; Star Printery Company v. Pitman, Okl., 376 P.2d 291, 294; Kerr-McGee Oil Industries, Inc. v. Mapes, Okl., 385 P.2d 426, 428.

▮▮▮▮ The medical evidence adduced below unmistakably identifies, as the causative force of claimant's pulmonary aggravation, the *irritating* effect rather than the *toxic* quality of smoke, dust and particulate matter present in the environment at employer's smelter. Claimant's exposure to smoke from the plant on June 26, stands uncontroverted. On that crucial day, as the evidence clearly indicates, claimant did come in direct contact with the causative irritants when a cloud of smoke arising from the zinc smelter blew over the gate area. According to the record, that area was enveloped in smoke "just about every time" the weather was "damp and heavy" and the wind blew from the north. The expert testimony of Drs. R and C amply shows that claimant was harmfully affected by "air that is contaminated with dust or smoke." Although the record does not disclose, by a day to day and a yard to yard dust count or pollution test, the exact quantity of irritants present in the air around the gate, the absence of such proof is not fatal to recovery. The question of whether evidence is entirely lacking in probative force because of its remoteness in terms of time or place must be controlled by the usual nature and state of the things sought to be proved thereby or inferred therefrom and by the particular circumstances of the case. Smittle v. Illingsworth, Okl., 373 P.2d 78, 81. The undisputed evidence here clearly indicates that: (1) the smoke to which claimant was exposed on June 26 arose from the toxic metal at employer's smelter; (2) claimant's condition of emphysema was harmfully affected by "any atmosphere that may be filled with dust or smoke"; and (3) the last exposure did occur while claimant was on duty

on employer's premises. Since the level of air contamination was not material in determining the harm of exposure to claimant, the proof so adduced may not be viewed as too remote. We therefore find the evidence sufficient to establish the factum of hazardous exposure on June 26 to the causative force of claimant's pulmonary aggravation.

Neither do we find any merit in the assertion that the finding of last hazardous exposure on June 26 lacks basis in medical evidence. On this point we deem especially appropriate the language employed in Climax Molybdenum Company v. Industrial Commission, 146 Colo. 558, 362 P.2d 565, 569.

"* * * *It is true that Claimant presented no expert testimony bearing on the issue of injurious exposure nor did he, for example, produce a day to day dust count for the eighteen years he worked for the Employer. But such is not the only method of establishing one's right to benefits under the OD Act. Lay testimony as to the dust conditions arising from toxic material is entirely proper*; and where, as here, it is admitted that Claimant has disabling silicosis which, according to the statutory definition, is due 'to breathing air containing uncombined silicon dioxide ($SiO_2$) dust,' and further where it is undisputed, insofar as the evidence before the Commission is concerned, that exposure to silica dust occurred on the Employer's premises, then such lay testimony, buttressed by the inferences properly deducible therefrom, is of sufficient statute to support an award of compensation benefits. * * *"* (emphasis supplied)

See also, Idarado Mining Company v. Barnes, 148 Colo. 166, 365 P.2d 36, 37.

Lastly, employer complains that the award should be vacated because of claimant's failure to give the "statutory three-month notice". The trial tribunal found that the claim was filed "less than six months after his (claimant's) last hazardous exposure * * *, thereby giving * * * (employer) adequate actual notice * * *", as required by 85 O.S.Supp. 1953 § 24. The cited statute plainly provides that in case of an occupational disease, notice may be given either within 18 months from the date of last hazardous exposure or within 3 months from the date of disablement from the occupational disease. Claimant instituted this proceeding less than 18 months after the last hazardous exposure and less than three months after he quit working at the entrance gate. It stands undisputed that at the time claimant left his employment his condition had not advanced to a disabling stage; he was still under treatment and was able to perform the duties of his job as a gate attendant. Whether under these circumstances the 18 month period provided by law is unreasonably long may not be made the subject of our inquiry. Courts do not concern themselves with the merits, wisdom or advisability of legislative enactments but only with their meaning and validity. Special Indemnity Fund v. Harold, Okl., 398 P.2d 827; Special Indemnity Fund v. Thompson, Okl., 367 P.2d 1013. Nor is it necessary in this case to decide what effect, if any, did the amendment abridging the limitation period from three years to one year from the date of the last hazardous exposure have upon the eighteen month notice provision. See Parker v. Blackwell Zinc Company, supra. This is because the instant claim was filed within one year from the date of the last hazardous exposure.

The proceeding is free from errors of law. The award is accordingly sustained.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BERRY and HODGES, JJ., concur.

HALLEY, C. J., and BLACKBIRD, J., dissent.