CHARLES I. MYERS

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and* U. S. STEEL CORPORATION

(No. 13973)

Decided November 22, 1977.

*Michael F. Gibson, Johnston, Holroyd & Gibson,* for appellant.

*George W. S. Grove, Jr., Love, Wise, Robinson & Woodroe,* for appellees.

MCGRAW, JUSTICE:

This is an appeal by claimant, Charles I. Myers, from an order of the Workmen's Compensation Appeal Board which, in reversing the order of the State Workmen's Compensation Commissioner, held his claim noncompensable.

On June 12, 1974, claimant filed with the Commissioner an application for occupational disease benefits alleging that he had sustained a hearing loss during the course of and resulting from his employment with United States Steel Corporation.

The Commissioner ruled the claim compensable, the employer protested, protest hearings were held, and by order of July 9, 1976, the Commissioner ruled the claimant had sustained a compensable occupational disease. The employer appealed. By order of May 26, 1977, the Appeal Board, by a two to one vote, reversed the Commissioner and held the claim was not compensable. The Appeal Board made the following finding:

> "The evidence of Dr. A. J. Paine indicates that claimant, 59 years of age, basically sustained a unilateral hearing loss described as a sensorineural [sic] loss. The most common cause of this type of hearing loss is degeneration from advancing years.

> "The evidence, in our opinion, does not support the Commissioner's findings."

Claimant is a retired coal miner with thirty-four years of experience in and around the mines. Except for four years on the tipple, he spent his working time underground as a pumper, roof bolter, shot firer, timberman and trackman.

He worked for United States Steel Corporation for a continuous twenty-three year period before his retirement in 1973, having been initially employed in May of 1950. For a three-year period, ending in 1955, he worked as a "shot firer", one whose job it was to set off series of dynamite shots six to eight times every shift.

From 1955 until 1973, he was employed as a roof bolter and operated an Acme pneumatic top-pinning or roof-bolting (stoper) machine. The machine which he operated drove metal bits into the roof of the mine as deep as seven feet. The uncontroverted record testimony was that the machine produced several sounds a minute louder than a gunshot and that there was "so much noise you couldn't hear nothing [else]." In addition, the machine had an automatic safety valve which made frequent loud noises when 110 p.s.i. air pressure was released at one to two minute intervals. Claimant further testified that he operated the roof-bolting machine in close proximity to a very noisy continuous mining machine.

The claimant testified that while his hearing "got worse in the last two years" he first noticed changes in his hearing "ten years ago." He said his foreman once brought this impairment to his attention and suggested that his hearing loss might be job-related.

The claimant's physician, an otolaryngologist, furnished the medical evidence in the case. In his preliminary report, the doctor noted that claimant had noticed a hearing loss over a long period of time which had become more marked or noticeable since his retirement. The doctor diagnosed the loss as sensorineural in both ears which was more marked in the right ear than the left and which was "probably in great part" a result of claimant's employment.

After testifying that claimant's condition was probably permanent, the doctor responded to the following hypothetical question:

> "Doctor, assuming that this gentleman has a history of working in the close confines of an underground mine in close proximity of roof bolting machines, continuous miners, for approximately ten or I'm sorry fifteen to twenty years then prior to that had a history of working as a dynamite shooter do you have an opinion based upon reasonable medical certainty as to the causation of the hearing loss found in Mr. Myers?

> "A. Well, it certainly would seem to fit into the pattern we see with those people who are exposed to this type of sound trauma."

The doctor testified that sensorineural hearing loss is the type of hearing loss which occurs when the hearing nerve, or any part of it, is damaged or degenerates. He testified that a sensorineural hearing loss can also result from viral illness, diabetes, arteriosclerosis, toxic substances, congenital defects and presbycusis.

The doctor further testified that ordinarily sensorineural hearing loss caused by industrial noise is relatively uniform as to each ear. But when he was asked if one or several of the explosions to which claimant was exposed over a period of time as a "shot-firer" could have caused this type of hearing loss, he stated that there was no question but that this could have occurred. The doctor was then asked, "And since it is worse in one ear, it is likely, isn't it?" He answered, "That would be my impression, yes."

The disposition of this case requires the application of the statutory provision which both defines occupational disease and sets forth the standard a claimant must meet in order to recover benefits under the law. *W. Va. Code*, 23-4-1 provides, in pertinent parts, as follows:

> "For the purposes of this chapter the terms 'injury' and 'personal injury' shall include ... any ... occupational disease, as hereinafter defined ...

"For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable except when it follows an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumonoconiosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct casual connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence though it need not have been forseen or expected before its contraction."

In applying the statute to the undisputed facts in this case, we begin with a fundamental rule of workmen's compensation law. A spirit of liberality is to be employed in applying the provisions of the Workmen's Compensation Act and in construing the evidence. This principle dictates that this Court examine the record and give the claimant the benefit of all reasonable inferences the record will admit favorable to him.

The uncontroverted testimony is that while working for three years in the confines of an underground coal mine, the claimant was exposed to the noise from dyna-

mite explosions. The Court takes judicial notice that dynamite explosions make loud noises. Thereafter he was, while working in close proximity to a noisy continuous mining machine, exposed for 18 years to noises from a pneumatic roof bolter, explosive in character and louder than a gunshot blast. Furthermore, it is beyond dispute that an underground coal mine is an enclosed environment. In *Marie v. Standard Steel Works*, 319 S.W.2d 871, 878 (Mo. 1959)(en banc), the court, in a workmen's compensation hearing loss case, found, "where a person is in an enclosed space, all the vibrations are delivered to his ears and he is affected more than if he were in the open where the vibrations would be dissipated."

The employer here made no attempt to refute claimant's testimony, nor did it attempt to show the noise level claimant was exposed to was insufficient to cause gradual sensorineural hearing loss. On this point the doctor testified that, "I think noise above a 90 decibel level would be injurious over varying periods of time ... and even below that level enough exposure possibly down to 80 decibels could be injurious." He further stated that "[T]he new Occupational Health and Safety Standards ... specify the length of time that one can work in certain environments." Pursuant to *W. Va. Code*, 57-1-4, we take judicial notice of federal noise standards promulgated under the authority of the Federal Coal Mine Health and Safety Act, of 1969, *as amended*, 30 U.S.C. §§ 801, 846 (1971), currently codified in 30 C.F.R. § 70.510 (1976).[1]

---

[1]          Table I—Permissible Noise Exposures

| Duration per day (hours) | Noise level (dBA) |
|---|---|
| 8 | 90 |
| 6 | 92 |
| 4 | 95 |
| 3 | 100 |
| 1-1/2 | 102 |
|  | 105 |
| 3/4 | 107 |
| 1/2 | 110 |
| 1/4 or less | 115 |

The record does not show the noise level in the claimant's work place, but the Court is aware that the Federal Mine Enforcement and Safety Administration characterizes the pneumatic stoping drill as the worse noise offender in the industry with an average operating decibel level of 119.4, and the continuous miner as the second loudest with an average cutting decible level of 97.2.[2] The court also notes that federal regulations require initial and periodic noise level surveys after June 30, 1971.[3] The natural inference, arising from all the circumstances, is that the documentary evidence available to the employer was unfavorable.

The Appeal Board order holds that the claimant suffered a unilateral hearing loss and attributes the claimant's hearing loss completely to his age, but the physician's report and testimony show the hearing loss to be bilateral in nature and consistent with the type of hearing loss observed in persons exposed to industrial noise over a period of time. A claimant in a workmen's compensation case must bear the burden of proving his claim, but, in doing so, it is not necessary to prove to the exclusion of all else the causal connection between the injury and the employment. *Sowder v. State Workmen's Compensation Commissioner*, 155 W. Va. 889, 189 S.E.2d 674 (1972). Thus, it is not the claimant's burden to negative all possible non-occupational causes of his injury.

Upon consideration of the medical evidence, the noisy nature of claimant's work throughout virtually all of his employment history, and all the other evidence con-

---

[2] U. S. Dep't of Interior, Mine Enforcement Safety Administration, Informational Report 1034, The Noise Environment of the Underground Coal Mine, Table 6, (1976).

[3] § 70.508 Periodic noise level survey.

(a) At intervals of at least every 6 months after June 30, 1971, but in no case shall the interval be less than 3 months, each operator shall conduct, in accordance with this subpart, periodic surveys of noise levels to which each miner in the active workings of the mine is exposed and shall report and certify the results of such surveys to the Mining Enforcement and Safety Administration, and the Department of Health, Education, and Welfare, using the Coal Mine Noise Data Report Form.

tained in the record, we feel it manifestly clear that the claimant sustained an occupational disease within the contemplation of *W. Va. Code*, 23-4-1; that it occurred in the course of and as a result of his employment; that there is a direct casual connection between the conditions under which his work was performed and the occupational disease; that his occupational hearing loss can be seen to have followed as a natural incident of his work; and that it can be fairly traced to the employment as the proximate cause.

Therefore, the Court holds that an employee who suffers a noise-induced gradual hearing loss during the course of and resulting from his employment, sustains an occupational disease, by definition, a personal injury under the provisions of *W. Va. Code*, 23-4-1. *See, Lilly v. State Workmen's Compensation Commissioner*, ____ W. Va. ____, 225 S.E.2d 214 (1976). For other courts which have held that a noise-induced hearing loss is an occupational disease see *Marie v. Standard Steel Works, supra; Rosati v. Despatch Shops, Inc.*, 298 N.Y. 813, 83 N.E.2d 860 (1949); *Slawinski v. J. H. Williams & Company*. 298 N.Y. 546, 81 N.E.2d 93 (1948); *Green Bay Drop Forge Company v. Industrial Commission*, 265 Wis. 38, 60 N.W.2d 409 (1953), *rehearing denied*, 61 N.W.2d 847; 1A A. Larson, The Law of Workmen's Compensation § 41.50 (1973).

For the reasons herein stated, the May 26, 1977, order of the Appeal Board is clearly wrong and must be reversed. The case is remanded with directions that the claim be held compensable. It is further ordered that the Court's ruling be certified to the Appeal Board and to the Workmen's Compensation Commissioner pursuant to the provisions of *W. Va. Code*, 23-5-4.

> *Reversed and remanded with directions.*