346 S.E.2d 757

**Ralph HANNAH**

v.

**WORKERS' COMPENSATION COMMISSIONER and Eastern Associated Coal Corporation.**

**No. 16861.**

Supreme Court of Appeals of West Virginia.

April 3, 1986.

Dissenting Opinion July 10, 1986.

order of the Workers' Compensation Appeal Board which affirmed the Commissioner's ruling rejecting the application as being untimely filed. The extent of disability, if any, is not currently at issue. The limited question developed below is whether the claim is subject to consideration as being timely presented.

The pertinent facts are as follows. The appellant, who retired on September 30, 1981, had been employed by Eastern Associated Coal Corporation for over 34 years. The major portion of his work experience was spent underground in various job capacities, including fire boss, loading machine operator, cutting machine operator, jackhammer operator, and shot fireman. During the final 4 to 5 years of his career, however, he worked above-ground as a radio dispatcher.

On January 27, 1983, approximately 16 months after leaving the employ of Eastern, the appellant filed an application for workers' compensation due to noise-induced hearing loss. The Commissioner, by order dated March 15, 1983, determined the claim to be compensable. The employer protested this ruling.

The protest hearing on the compensability issue was held on September 12, 1983. The only testimony presented was that of the appellant, under examination by the employer's counsel. The appellant stated that he first became aware of a hearing problem in 1974 or 1975, and that he initially sought medical diagnosis and treatment from a hearing specialist at that time. The appellant also testified that he made several visits to this physician, who eventually determined that his hearing loss was occupationally related and not amenable to corrective treatment. Upon inquiry as to his most recent exposure to occupational noise, the appellant testified that during his service as a dispatcher substantial noise emanated from the radio equipment.[1]

Richard G. Rundle, Pineville, for appellants.

Anthony J. Cicconi, Shaffer & Shaffer, Madison, for appellee.

McGRAW, Justice:

This appeal involves an application for workers' compensation due to occupational hearing loss. The claimant appeals a final

---

1. The following was part of the testimony elicited during the protest hearing below:

 [Employer's Counsel]: "Could you tell me just how you claim that you had the kind of noise exposure that would produce a hearing loss while working as a dispatcher?"

 [Claimant]: "Well, these radios—they come in on such a high frequency that sometimes when you're talking, you don't get [any] sound with the exception of a high pitched buzz and sometimes when that comes in, you almost go bananas. That's all."
 Q: "Do you wear a headset or whatever?"

At the conclusion of the claimant's testimony, the claim was submitted for decision on the nonmedical question of compensability. On November 16, 1983, the Commissioner set aside her previous compensability determination and ruled that the application must be rejected as not timely filed. On June 7, 1985, the Appeal Board affirmed the Commissioner's final ruling. The Board quoted the applicable limitations period contained in West Virginia Code § 23–4–15 (1985 Replacement Vol.) and noted two grounds therein for rejection of the application: (1) the claim was filed over three years from the date of last exposure to hazards of the occupational disease; and (2) the claim was filed over three years from the time the claimant had knowledge that he was suffering from the occupational disease. For the reasons which follow, we find the legal conclusion of the Board to be error.

As cited by the Board, the applicable limitations provision states, in relevant part, that:

> To entitle any employee to compensation for occupational disease other than occupational pneumoconiosis under the provisions hereof, the application therefor must be ... filed in the office of the commissioner within three years from and after the day on which the employee was last exposed to the particular occupational hazard involved or within three years from and after the employee's occupational disease was made known to him by a physician or which he should reasonably have known, whichever shall last occur....

West Virginia Code § 23–4–15 (1985 Replacement Vol.)

A: "No, sir. It's set off to my right."
Q: "What was this radio? Does that keep you in contact with the motormen?"
A: "Motormen; yes, sir."
Q: "Do they go on all the time?"
A: "Yes, sir."
Q: "Is this a steady noise or just occasional?"
A: "Well, no, it wasn't a steady noise; it had off and on during the shift. You might go for 15 or 20 minutes and everything would be just as clear as could be and just now, it would come in and you'd want to go out and shut the door."

The language of this provision may be generally summarized as providing that the 3–year period begins to run against a prospective claimant only after the *latest* occurrence of three possible dates: (1) date of last exposure to the hazard involved; (2) date of receipt of a medical diagnosis that one has a disease (or perceptible aggravation of an existing disease) that is wholly or partially occupational in origin; or (3) date that constructive knowledge of such a disease may be imputed by reason of awareness of facts which should have led to inquiry and discovery.

The appellant herein does not challenge the Appeal Board's conclusion that, before filing, three years had passed since he had received medical confirmation that his hearing problems were occupationally induced. Rather, the appellant challenges the Appeal Board's conclusion that the application was also not submitted within three years of the date "last exposed to the particular occupational hazard involved...." West Virginia Code § 23–4–15 (1985 Replacement Vol.). Although the appellant's work history indicates probable exposure to substantial industrial noise during his three decades of underground mining, the only period implicated by this statute of limitations provision is his final 4 to 5 years as a dispatcher. Therefore, the controlling question is whether the evidence of industrial noise exposure during this latter period constituted a sufficient showing of a "hazard" as that term is used in the Workers' Compensation Act.

Under West Virginia Code § 23–4–1 (1985 Replacement Vol.), compensation is paid to employees for "personal injuries [received] in the course of and resulting

Q: "What did you do before you were a dispatcher?"
A: "I was a fire boss, loading machine operator, cutting machine operator, jackhammer operator, shot fireman."
Q: "Now, you've previously indicated that you had some hearing problems before you were a dispatcher, is that right?"
A: "Yes, sir."
Q: "Well, when did you first have hearing problems?"
Q "It seems to me like it was in '74 or '75."

from their covered employment...." This section goes on to provide that "[f]or the purposes of this chapter the terms 'injury' and 'personal injury' shall include occupational pneumoconiosis and any other occupational disease ... [where] such employees have been exposed to the hazards of occupational pneumoconiosis or other occupational disease...." Noise-induced gradual hearing loss sustained by a covered employee in the course of and resulting from employment is such a compensable occupational disease. *Myers v. State Workmen's Compensation Commissioner*, 160 W.Va. 766, 239 S.E.2d 124 (1977).

However, no definition of exposure to a "hazard" relating to sensorineural hearing loss, or any other occupational disease, is contained in the State's Workers' Compensation Act.[2] In *Meadows v. Workmen's Compensation Commissioner*, 157 W.Va. 140, 198 S.E.2d 137 (1973), it became necessary for this Court to determine the definition of "hazard" as it relates to occupational pneumoconiosis. We concluded that the intended meaning of "hazard" as it applied to that particular disease was "any condition where it can be demonstrated that there are minute particles of dust in abnormal quantities in the work area." 157 W.Va. at 145, 198 S.E.2d at 139. Resolution of the question presented in the instant case simply requires a similar application of the ordinary and accepted meaning[3] of "hazard" as it relates to the generic designation of "any other occupational disease."

In *Blackwell Zinc Company v. Parker*, 406 P.2d 965 (Okla.1965), the Oklahoma Supreme Court was presented an appeal from an award of workers' compensation, where the employer argued the employee's claim was barred under the one-year limitation period which began to run from the date of last "hazardous exposure." The claimant had been employed at the employer's zinc smelting plant from 1943 through 1956. From 1943 until mid–1955, he was engaged in tasks which placed him "in direct contact with fumes, vapor and smoke emanating from zinc processing furnaces." 406 P.2d at 967. After lung surgery related to what was diagnosed as emphysema directly attributable to his occupation, the claimant returned to work and was given a job as an attendant at the entrance gate (located 600 feet from the furnace area) to the smelting plant. He held this job from September 1955 to October 1956; and filed his claim two months later.

The employer argued on appeal that the claimant's alleged exposure to "a whiff of smoke" on one occasion while working in the open air during his final year as a gate attendant should not have been determined as his date of last hazardous exposure because it bore no "reasonable relation in time, place and conditions" to the original hazard of the furnace department. The Oklahoma Supreme Court rejected the employer's argument and affirmed the lower tribunal, stating that:

> As we view this argument, it rests on the assumption that the "last hazardous exposure" to the causative force of the harm must be perceptibly pathogenic and be of itself sufficient to effect disability. This is patently untenable. The injurious consequences of exposure are the product of gradual development extending over a *period* of time rather than the result of a *point* of time. No one particular exposure may be singled out and be regarded as responsible for the disease or any part thereof. It can only be said that the *aggregate exposures* resulted in harm. In short, the disability culminates from the cumulative effect of a pro-

---

**2.** We note that as part of the recent amendments to the Workers' Compensation Act made during the 1986 legislative session (H.B. 2179), the legislature added a new section (§ 23–4–6b) dealing specifically with occupational hearing loss claims, including those filed due to loss caused "by exposure to hazardous noise in the course of and resulting from employment...." The term "hazardous noise" is not defined under this new section.

**3.** "In the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meanings." Syl. pt. 1, *Thomas v. Firestone Tire & Rubber Co.*, 164 W.Va. 763, 266 S.E.2d 905 (1980); Syl. pt. 3, *Hodge v. Ginsberg*, 172 W.Va. 17, 303 S.E.2d 245 (1983).

longed exposure rather than from a series of individual exposures. 406 P.2d at 968 (emphasis original).

The Court went on to conclude that:

> The occupational disease amendment to the Workmen's Compensation Act does not require that the ultimate or any particular exposure be in itself disabling or consist of a discrete injurious episode which perceptibly furthers the progression of a pre-existing condition or the course of a disease. By dictionary definition the term "hazardous exposure" means merely the state of being accessible or laid bare to the risk or potential of detriment. *Id.*

 Consonant with the reasoning and conclusions contained in the *Meadows* and *Parker* decisions, we conclude that in a claim for noise-induced occupational hearing loss, a "hazard," as contemplated by the Workers' Compensation Act, exists in any work environment where unusual or excessive noise is shown to be present. The Appeal Board concluded that the appellant "failed to establish by proper and satisfactory proof that he was exposed to hazards of occupational disease" within the requisite filing period. Under the foregoing principles, we find this legal conclusion of the Board to be wrong. The evidence in this case clearly demonstrates that the appellant was exposed to unusual and excessive noise trauma in the work area.[4] The employer here made no attempt to refute the appellant's testimony regarding the quantity of noise. Accordingly, we conclude that the appellant established a sufficient prima facie case of a noise hazard, unrebutted by the employer, to support the legal conclusion that his application was timely under West Virginia Code § 23–4–15 (1985 Replacement Vol.), as being filed within three years of the last date of hazardous exposure.

The order of the Workers' Compensation Appeal Board, dated June 7, 1985, is hereby reversed, and the case is remanded to the Commissioner to enter an order ruling the claim compensable and to further proceed toward a medical determination of the existence of any disability.

Reversed and remanded.

BROTHERTON, Justice, dissenting:

I respectfully dissent from the majority opinion.

In this case the Appeal Board found that the appellant's hearing loss occurred prior to 1980. Evidence supporting this conclusion included a doctor's diagnosis of hearing loss in 1975 and the fact that the appellant originally worked as a loading machine operator, cutting machine operator, and jackhammer operator, all involving great amounts of constant noise. The last four to five years with Eastern Coal were spent as a radio dispatcher, a relatively quiet job. The only evidence of a hazard was the appellant's statement that the radio occasionally made a high-pitched buzz.

The majority of this Court overturned this decision by the Appeal Board. In doing so, they had to avoid an oft quoted, but little respected rule of law, that the findings of fact by the Workers' Compensation Appeal Board will not be disturbed by the Supreme Court unless they are clearly wrong. *See, e.g., Prince v. State Comp. Comm.*, 123 W.Va. 67, 70, 13 S.E.2d 396, 398 (1941); W.Va.Code § 23–5–4a (1985). It is obvious from the facts in this case that the appellant's deafness, if it resulted from his occupation, was caused by the earlier jobs using noisy heavy equipment. An occasional squelch by the radio did little, if anything, to worsen his condition. Therefore, instead of addressing the case as one where this Court was overturning the Board on an issue of fact, the majority pretended to decide a legal issue.

> The Appeal Board concluded that the appellant "failed to establish by proper and satisfactory proof that he was exposed to hazards of occupational disease" within the requisite filing period. Under the foregoing principles, we find this *legal conclusion* of the Board to be wrong.

---

4. Expert testimony or noise level tests are not required in order to show that a workplace is excessively noisy. *Food Machine Corporation v. Shook,* 425 So.2d 163 (Fla.App.1983); *McCuiston v. Addressograph-Multigraph Corporation,* 308 N.C. 665, 303 S.E.2d 795 (1983).

The evidence in this case clearly demonstrates that the appellant was exposed to unusual and excessive noise trauma in the work area.

*See* Maj. opin. at p. 612. (emphasis added.)

It was always my understanding that deciding what the evidence demonstrates is deciding issues of fact, not law. The majority improperly classified an issue of fact as an issue of law.

I, therefore, respectfully dissent.

I am authorized to state that Justice NEELY joins me in this dissent.