# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JUD T. SEECH,**
**Claimant Below, Petitioner**

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 22-ICA-182**      (JCN: 2021025884)

**FRONTIER KEMPER CONSTRUCTORS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jud T. Seech appeals the Workers' Compensation Board of Review's ("Board's") order dated September 21, 2022, affirming the claim administrator's order rejecting the claim for bilateral carpal tunnel syndrome ("CTS"). Respondent Frontier Kemper Constructors, Inc. ("Frontier") filed a timely response.[1] Petitioner did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision but no substantial question of law. For the reasons set forth below, the Board's decision is vacated, and this case is remanded for further proceedings consistent with this decision.

Mr. Seech completed an Employees' and Physicians' Report of Occupational Injury or Disease form ("WC-1 form") on May 15, 2021, indicating he developed a wrist problem while working as an underground miner and roof bolter.[2] On the WC-1 form, Mr. Seech explained that he developed CTS as a result of the work he performed for Frontier that required his hands and wrists to be in a locked position on tram levers while using a Fletcher diesel roof bolter. He also noted that his work exposed him to vibrations from using a hydraulic pump and pneumatic tools such as a jackhammer, drill, and air impact tools. Mr. Seech listed April 27, 2021, as the date of last exposure. Mark Harris, PA-C, completed the healthcare provider section of the form and listed the diagnosis of bilateral

---

[1] Mr. Seech is represented by J. Thomas Greene, Jr., Esq. and T. Colin Greene, Esq. Frontier is represented by Maureen Kowalski, Esq.

[2] The Board did not provide any specific findings of fact about WC-1 form, nor did it make more than a cursory statement in the order's discussion section about it.

CTS as a recurrent occupational injury[3] and indicated that the condition aggravated a prior injury/disease. Mr. Harris indicated that Mr. Seech's recurrent use of his hands and exposure to vibrations caused nerve entrapment. The WC-1 form also reflects that Mr. Harris took Mr. Seech off work and referred him to Dr. Alqueda.

Mr. Harris is Mr. Seech's primary care provider who has treated Mr. Seech regularly for the last four to seven years. Office visit notes dated May 6, 2021, show that Mr. Seech reported to Mr. Harris that for the last month he had experienced tingling, numbness, and pain in his fingers, hands, and wrists. Mr. Harris also reported that Mr. Seech's work involved using both hands with repetitive flexion and extension while using tram levers and Mr. Harris noted that Mr. Seech's work exposed him to vibrations. Mr. Seech also told Mr. Harris that using jackhammers and other vibrating tools worsened the numbness and tingling. Mr. Harris' four-page report included a record of Mr. Seech's current medications, active problems, height, weight, BMI, and other physical exam findings. Further, Mr. Harris assessed Mr. Seech with prediabetes, polyarthritis unspecified, sprain of the anterior cruciate ligament of the left knee, and bilateral CTS. Mr. Harris referred Mr. Seech to a neurologist for a nerve conduction velocity study ("NCV") and wrist splints were recommended. Hannah A. Valentine, M.D., electronically approved Mr. Harris' report on May 24, 2021.

Mr. Seech also completed a questionnaire on June 30, 2021, reporting that the pain and numbness in both of his hands began gradually around March 2, 2021. In this form, Mr. Seech noted that hand numbness resulted after he ran air equipment and operated machinery.

On July 1, 2021, Mr. Seech saw Adnan Alghadban, M.D., for a neuromuscular ultrasound. Dr. Alghadban determined that the testing showed evidence of bilateral median neuropathies at the wrists. Dr. Alghadban recorded Mr. Seech's height, weight, and BMI, and listed Mr. Seech's current medications. Dr. Alghadban prescribed medication and took Mr. Seech off work.

By order dated August 31, 2021, the claim administrator rejected the claim, finding that Mr. Seech did not sustain an injury in the course of and resulting from his employment. The claim administrator further stated that there was "[n]o medical evidence to support that your alleged injury resulted [from] your employment with Frontier-Kemper Constructors."

On September 3, 2021, Mr. Harris wrote a memo noting that his examination of Mr. Seech on May 6, 2021, was concerning for CTS. Mr. Harris opined that Mr. Seech's CTS

---

[3] Although Mr. Harris checked a box on the WC-1 form for an "occupational injury" instead of the box for an "occupational disease," he did not describe a physical or traumatic injury on a certain date, but rather a condition related to repetitive movements.

was secondary to an occupational injury/illness because the vibrating tools Mr. Seech used in his mining work were significant contributing factors for CTS. A letter and email from Phillip Kittinger, a safety specialist for Frontier, confirmed that Mr. Seech's job duties at Frontier included the use of handheld or machine-mounted drills, loading and tamping drill holes, use of a Fletcher roof bolter, shoveling out sump boxes, and loading holes with explosives.

Mr. Seech testified by deposition on November 11, 2021, about his work activities in the coal mining industry. Specifically, Mr. Seech described the types of equipment he used, such as a diesel roof bolter. Mr. Seech described how the use of the bolter would require his hands to be in a locked position and that the vibrations from the machine caused his hands to go numb. Mr. Seech also discussed the vibrations produced by an air-pressured hose he used to pump explosives into the holes. According to Mr. Seech, his hand symptoms became noticeable around March 6, 2021. He said that initially, the symptoms would improve during his days off, but later, around April of 2021, the symptoms became constant. He last worked on April 27, 2021.

Mr. Seech testified that in his prior work as a production foreman and fire boss at United Coal Company ("United") he was exposed to hand-controlled levers and vibrating tools for three and one-half years. Although Mr. Seech admitted he had some occasional numbness in his hands while working for United, he testified that he did not seek treatment at that time. Further, Mr. Seech testified about his other past work exposure, which included painting and sandblasting, and about twelve years of work in the coal mining industry with other employers performing work similar to his work at Frontier.

On March 1, 2022, Marsha Lee Bailey, M.D., examined Mr. Seech and noted that his work involved vibratory and other hand tools. Mr. Seech explained to Dr. Bailey that when he began operating a diesel roof bolter for Frontier, his hands began to "lock up" and become numb. From medical records, Dr. Bailey determined that Mr. Seech's symptoms, and diagnosis of CTS, predated his employment with Frontier, and commented that his condition had not improved after he stopped working. Although Dr. Bailey diagnosed CTS, she assigned the etiology to Mr. Seech's obesity and expressly determined that the condition was unrelated to his forty-five days of working at Frontier.

On September 21, 2022, the Board relied on Dr. Bailey's report to affirm the claim administrator's order. The Board found that the reports of Mr. Harris did not state "that he considered the claimant's overall physical condition including his obesity or prediabetic condition in assigning causality" to occupational activities. Contrasting Mr. Harris' reports with that of Dr. Bailey, the Board found that the latter report provided a thorough discussion about other potential causes of Mr. Seech's CTS and determined that it was not work-related. It is from the Board's order that Mr. Seech now appeals.

3

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under West Virginia Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, __W. Va.__, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Seech argues that the Board erred in finding that Mr. Harris had not considered Mr. Seech's obesity, even though Mr. Harris was the primary care provider for Mr. Seech for more than five years. Mr. Seech asserts that Mr. Harris was aware of and accounted for his body mass index, prediabetes, and other factors that were noted in Mr. Harris' report when he determined CTS was occupationally related. Further, Mr. Seech contends that the Board erred in basing its decision on Dr. Bailey's conjectural opinion that, despite Mr. Seech's extensive occupational exposure to excessive vibrations and repetitive motions, obesity was the sole cause of his CTS. Mr. Seech contends that his work exposed him to the types of vibratory tools, significant grip force, and repetitive movements that are known contributors to the development of CTS. Mr. Seech also noted that he had experienced intermittent symptoms in his hands when he worked for United, although the symptoms would resolve on their own. According to Mr. Seech, Dr. Bailey was aware that his symptoms increased as a result of his job duties at Frontier.

Upon review, we find the Board's decision was in error as it failed to apply the necessary criteria to determine the compensability of CTS. Pursuant to West Virginia Code of State Rules § 85-1-13.2 (2009), "[c]arpal tunnel and all other nerve entrapment syndromes of the upper extremity shall be filed as occupational disease claims unless the syndrome is a secondary diagnosis to an otherwise compensable injury." Based on the questionnaire, a WC-1 completed by Mr. Seech and Mr. Harris, and Mr. Harris' notes, it is clear that Mr. Seech was asserting that his CTS was attributable to a syndrome caused over time by the repetitive movements required at his workplace. Because Mr. Seech contends

4

that his CTS is related to "recurrent" movements and not a diagnosis secondary to an "otherwise compensable injury" (i.e., traumatically induced CTS), his claim should have been reviewed as an occupational disease.[4]

With regard to occupational disease, West Virginia Code § 23-4-1(f) (2021) provides:

> a disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee, and (6) that it must appear to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

*See Adams v. United Parcel Serv., Inc.,* No. 22-ICA-16, 2022 WL 17164472, at *2–3 (W. Va. Ct. App. Nov. 15, 2022) (memorandum decision) (Court affirmed Board's order finding, after applying six statutory criteria, that evidence did not establish claim for occupational CTS).

In the present case, the Board did not apply or address the criteria at all. In its order, the Board mentioned West Virginia Code of State Rules § 85-20-41 (2006), which sets

---

[4] Although Mr. Harris checked the box on the WC-1 form indicating that the CTS was an "occupational injury," he also made it clear that he was diagnosing a nerve entrapment related to recurrent movements unrelated to a trauma. Thus, the compensability of the claim should be considered as "occupational disease." Mr. Harris' checking of this box is not found to be anything more than a technical mistake, which should have made no difference to the compensability analysis since there was adequate additional information showing that an occupational disease was alleged. Per West Virginia Code § 23-5-13a (2022), "[i]t is also the policy of this chapter to prohibit the denial of just claims of injured . . . workers . . . on technicalities." Further, the Supreme Court of Appeals has noted that "[a]lthough the rules and regulations governing the workers' compensation system in this state are necessarily detailed and complex, we must be careful to prevent those deserving of compensation from being thwarted by technicalities or procedural niceties." *Martin v. Workers' Comp. Div.*, 210 W. Va. 270, 275, 557 S.E.2d 324, 329 (2001).

forth the factors to be assessed when determining causality. These factors include "confounding conditions," and also the types of work settings which place certain "occupational groups at high risk for CTS." However, the Board did not analyze and discuss Mr. Seech's work duties under the rule.

Further, we note that the Board relied upon Dr. Bailey's report in affirming the claim administrator's order. Dr. Bailey's review was erroneous in two ways. First, Dr. Bailey failed to fully consider Mr. Seech's overall exposure, including similar work he performed for other employers. Second, Dr. Bailey indicated that Mr. Seech's CTS predated his employment at Frontier, which is an erroneous standard and analysis for an occupational disease, and is more applicable to an occupational injury.

West Virginia Code § 23-4-1(f) contemplates the development of an occupational disease through on-the-job exposure while employed by multiple employers. In occupational disease claims, such as CTS, West Virginia Code § 23-4-1(f) gives the Insurance Commissioner discretion to allocate the responsibility and liability between multiple employers. As we explained in *Lindy & Fred Seco General Revokable Trust v. Keller*, No. 22-ICA-82, 2023 WL 1463355 at *4 (W. Va. Ct. App. Feb. 2, 2023) (memorandum decision), beginning in 2006 the Insurance Commissioner issued a notice that it was exercising its discretion to not allocate or divide charges for claims among employers from which a claimant received exposure to the hazard of an occupational disease. Notably, the Commissioner's notice even specifies that it applies to the "practice of claims allocation of workers' compensation claim [sic] for occupational pneumoconiosis (OP) … and other occupational diseases (OD), **including carpal tunnel syndrome**."[5]

The Commissioner's decision to not allocate claims among employers in occupational disease claims was approved by the Supreme Court of Appeals in *Pioneer Pipe, Inc. v. Swain*, 237 W. Va. 689, 791 S.E.2d 168 (2016). Further, in *Pioneer Pipe,* the Court held that an occupational disease claim for hearing loss could be maintained and charged against the employer for whom the worker had only worked (and been exposed to hazardous noise) for a total of forty hours even though the employee also had exposure to hazardous noise while working for other employers for thirty-three years. *Id.*

The Supreme Court of Appeals recently held that a claim for hearing loss, as an occupational disease, was compensable even though the worker had less than a year of occupational noise exposure with the employer against whom he filed his claim, but where, overall, he had "a long history of industrial noise-exposure while working in the mines."

---

[5] W. Va. Off. of Ins. Comm'r, Notification Regarding Claims Allocation – Elimination of Claims Allocation on 1/1/06. (Emphasis added) https://www.wvinsurance.gov/Portals/0/pdf/wc/notices/claims-allocation-information.pdf.

*Murray Am. Energy, Inc. v. Bailey*, No. 21-0220, 2022 WL 1684373, at *3 (W. Va. May 26, 2022) (memorandum decision). In *Murray,* as in *Pioneer Pipe*, the Court found that allocation is at the discretion of the Office of Insurance Commissioner, and the Commissioner has declined to do so. *Pioneer Pipe*, 237 W. Va. 689, 791 S.E.2d 168 (2016).

In the present case, Dr. Bailey also determined that Mr. Seech's CTS predated his employment with Frontier. This analysis implies that perhaps Mr. Seech was too late in filing his claim for CTS. However, in this respect also, CTS caused by repetitive motion as opposed to an injury-related condition, should be analyzed similarly to claims for hearing loss.[6] In determining compensability, the focus is more appropriately on determining whether a claimant continued to be exposed to the pertinent risk or hazard while working for the employer. Here, the question should have been whether Mr. Seech's work at Frontier continued to expose him to risks of developing CTS, thus, continuing and extending his date of last exposure for this disease.[7]

West Virginia Code § 23-4-15(c) provides a statute of limitations for filing an occupational disease claim.[8] The Supreme Court of Appeals interpreted this statute to mean that there are

---

[6] As discussed, CTS may be an occupational disease or a diagnosis related to an injury. *See* W. Va. Code R. § 85-1-13.2. The discussion in this memorandum decision pertains to CTS that is an occupational disease rather than a condition resulting from an injury.

[7] We distinguish the present case from *Spartan Mining Co. v. Anderson*, No. 17-1003, 2018 WL 2306287 (W. Va. May 21, 2018) (memorandum decision), in which the Supreme Court reversed and remanded the claim for CTS with instructions to reinstate its rejection. In *Spartan*, the Court indicated that the claimant's symptoms not only predated his employment with the employer charged in the claim, but also that three reviewing doctors did not find that his job with the named employer supported the type of exposure associated with developing CTS. We also note *Smith v. Brooks Run S. Mining, LLC*, No. 21-0474, 2022 WL 10218886 (W. Va. Oct. 18, 2022) (memorandum decision), in which the Court agreed with the Office of Judges' decision that a preexisting CTS was not compensable because it was not aggravated by work performed at the current employer. Although memorandum decisions may be cited as legal precedent, "where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." *In Re: T.O.,* 238 W. Va. 455, 464, 796 S.E.2d 564, 573 (2017) (citing *State v. McKinley,* 234 W. Va. 143, 151, 764 S.E.2d 303, 311 (2014)).

[8] West Virginia Code § 23-4-15(c) (2010) provides:

To entitle any employee to compensation for occupational disease other than occupational pneumoconiosis under the provisions of this section,

two possible dates which trigger the running of the statute, of which the last occurring will be used. One of these dates will be the date of last exposure. The second possible date will be the earlier of either the date the claimant was advised of the occupational disease by a physician or the date the claimant should reasonably have known of the existence of the occupational disease.

*Holdren v. Workers' Comp. Comm'r*, 181 W. Va. 337, 340–41, 382 S.E.2d 531, 534–35 (1989).

In *Hannah v. Workers' Compensation Commissioner,* 176 W. Va. 608, 346 S.E.2d 757 (1986), the Court held that a prior diagnosis and treatment for another occupational disease, hearing loss, in 1974 or 1975, did not preclude the claimant from maintaining a claim for occupational hearing loss that he did not file until 1983 (sixteen months after his retirement). The *Hannah* Court noted that with respect to occupational hearing loss, there is "no definition of exposure to a 'hazard' relating to sensorineural hearing loss, or any other occupational disease" contained in the State's Workers' Compensation Act. *Id.* at 611, 346 S.E.2d at 760. Further, the Court concluded that Mr. Hannah had been exposed to the "hazard" of a noise-induced occupational hearing loss in his work environment and, therefore, the claim was timely filed.

In the present case, the proper inquiry would have been whether Mr. Seech's development of CTS was caused by his history of occupational exposure and whether his work at Frontier exposed him to the risks of developing CTS. The analysis must address the guidelines for CTS set out in West Virginia Code of State Rules § 85-20-41, which list work settings that place workers at high risk for developing CTS and must consider the six

---

the application for compensation shall be made on the form or forms prescribed by the Insurance Commissioner, and filed with the Insurance Commissioner, private carrier or self-insured employer, whichever is applicable, within three years from and after the day on which the employee was last exposed to the particular occupational hazard involved or within three years from and after the employee's occupational disease was made known to him or her by a physician or which he or she should reasonably have known, whichever last occurs, and unless filed within the three-year period, the right to compensation under this chapter shall be forever barred, such time limitation being hereby declared to be a condition of the right and therefore jurisdictional, or, in case of death, the application shall be filed as aforesaid by the dependent of the employee within one year from and after the employee's death, and such time limitation is a condition of the right and hence jurisdictional.

factors set forth at West Virginia Code § 23-4-1(f), in order to establish whether Mr. Seech's CTS is occupationally related. However, neither the claim administrator nor the Board performed this analysis. Therefore, we vacate and remand the claim to the Board for the claim to be reviewed and evaluated in accordance with this decision.[9]

Accordingly, we vacate and remand the Board's order dated September 21, 2021.

Vacated and Remanded.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[9] We find Mr. Seech's reliance on *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 879 S.E.2d 779 (2022) and Frontier's analysis under *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) to be misplaced as the issue here is whether Mr. Seech was exposed to the hazards of CTS. Because occupational disease claims are subject to allocation, the possibility of a preexisting condition is presumed and does not preclude a claim from being maintained.