VALENA P. POWELL, *Widow, etc.*

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

AND WEST VIRGINIA BOARD OF REGENTS

(No. 14917)

Decided December 19, 1980.

*Mike Magro, Jr.,* for appellants.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for appellees.

McGRAW, JUSTICE

This important appeal involves the interpretation and application of our Workmen's Compensation Laws. The principle question presented is whether lung cancer causally related to occupational exposure to asbestos dust can be a compensable occupational disease under the terms

of W.Va. Code § 23-4-1. We answer that question in the affirmative and hold that lung cancer can be an occupational disease within the meaning of this State's Occupational Disease Statute, W.Va. Code § 23-4-1, even though it can also be an ordinary disease of life which occurs in the general public.

On September 23, 1974, Mrs. Valena Powell filed a claim for widow's dependency benefits under the provisions of W.Va. Code § 23-4-10, which provides for death benefits where the employee's death results from occupational pneumoconiosis or from any other occupational disease.

The Workmen's Compensation Commissioner originally rejected the claim but on protest he set aside his ruling, held that the exposure requirements of the Act had been established, and referred the case to the Occupational Pneumoconiosis Board. During the course of the proceedings before the Board, the claimant's position was that her husband's exposure to asbestos dust during the course of his employment was a contributing factor to the cancerous lung condition causing his death. The Board found that the employee's death was not due to occupational pneumoconiosis and that occupational pneumoconiosis was not a contributing factor in his death.

The claimant protested these findings, contending the Board failed to consider and apply the occupational disease standards set forth in W.Va. Code § 23-4-1. Despite the claimant's contention below, both the Commissioner and the Appeal Board affirmed the Occupational Pneumoconiosis Board's findings and rejected the claimant's dependency claim on the limited grounds that the "employee's death was not due to occupational pneumoconiosis, nor was occupational pneumoconiosis a major contributing factor to his death."

The claimant appeals from that order, advancing the same argument here as advanced below. The Attorney General, as counsel for the Board of Regents, beseeches this Court to follow the law rather than its heart by affirming the Appeal Board. Irrespective of the Attorney General's plea, we conclude that the Appeal Board's failure

to consider whether the deceased employee's lung cancer was a compensable occupational disease was clear legal error and requires reversal. Because the Appeal Board either overlooked this contention or assumed without deciding that lung cancer, by itself, cannot constitute an occupational disease within the meaning of W.Va. Code § 23-4-1, it failed to make factual findings on the medical issues presented in the case. Syl. pt. 2, *Workman v. State Compensation Comm'r*, 160 W. Va. 656, 236 S.E.2d 236 (1977). For this reason, the case must be remanded. *Lilly v. State Compensation Comm'r*, 159 W. Va. 613, 225 S.E.2d 214 (1976).

Our occupational disease statute has covered occupational diseases other than those specifically listed in the statute since it was amended in 1949 *W.Va. Acts* ch.136. The definition of an occupational disease contained in the statute has remained unchanged since that amendment. In pertinent part the statute reads as follows:

> For the purposes of this chapter [23], occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment shall be compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease shall be deemed to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances (1) that there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of employer and employee, and (6) that it must appear to have had its origin in a risk

connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

. . .

An employee shall be deemed to have contracted an occupational disease within the meaning of this paragraph if the disease or condition has developed to such an extent that it can be diagnosed as an occupational disease.

This Court first recognized the significance of the 1949 amendment in *Miles v. State Compensation Comm'r*, 136 W.Va. 183, 67 S.E.2d 34 (1951). There the claimant, a welder at Union Carbide and Carbon Corporation, filed a claim for compensation contending that his physical condition, diagnosed by a physician as acute bronchitis, was due to the inhalation of vadium oxide dust in the course of his employment. The Occupational Disease Medical Board reported that the statutory prerequisities to compensability were present. Although the case was ultimately decided upon the narrow ground that the claimant had not been afforded an opportunity to fully develop his case, the Court noted that the Legislature had amended the statute to specifically compensate for occupational diseases other than silicosis. Prior to the amendment, silicosis was the sole occupational disease specifically compensable. The Court also correctly observed that the determination of whether the prerequisites of W.Va. Code § 23-4-1 have been satisfied involves both "nonmedical and medical inquiries." *Id.* at 188, 67 S.E.2d at 37.

In the last thirty years, this Court has had occasion to decide several other occupational disease cases under the statute. In *Shrewsbury v. State Workmen's Compensation Comm'r*, 155 W.Va. 794, 187 S.E.2d 597 (1972), the Court, in affirming the Appeal Board, concluded that occupational pneumoconiosis was an occupational disease separate and apart from silicosis. The statute under consideration there did not specifically designate occupational pneumoconiosis as a compensable occupational disease as does the statute today. Nonetheless, the Court held that occupational

pneumoconiosis was an occupational disease under the statutory criteria.

In *Clark v. State Workmen's Compensation Comm'r.*, 155 W.Va. 726, 187 S.E.2d 213 (1972), the Appeal Board awarded benefits to the widow of a deceased employee who, following occupational exposure to a number of toxic chemicals, died from acute myeloblastic leukemia. The medical testimony adduced in the proceedings was interpreted by the court to establish that the cause of this type of leukemia was unknown. This Court reversed on the ground that there was no proof establishing a causal connection between the leukemia and the deceased employee's work place.

It has also been held that, "[c]hronic bronchitis is ordinarily not considered an occupational disease and is not compensable unless there is sufficient proof that it was contracted in the course of and as a result of employment." Syl. pt. 2, *Huff v. State Workmen's Compensation Comm'r.*, 157 W.Va. 530, 202 S.E.2d 383 (1974), *citing*, *Ratcliff v. State Workmen's Compensation Comm'r.*, 146 W.Va. 920, 123 S.E.2d 829 (1962).

More recently, we held that a back injury which develops gradually is an occupational disease within the meaning of the statute where it results from the repeated performances of a specific job assignment. *Lilly v. State Workmen's Compensation Comm'r.*, 159 W.Va. 613, 225 S.E.2d 214 (1976).

And finally in *Myers v. State Workmen's Compensation Comm'r.*, 160 W.Va. 766, 239 S.E.2d 124 (1977), we held that claimant's noise-induced gradual hearing loss was an occupational disease under the statute. In making this ruling we held it was not necessary for the claimant to prove that his hearing loss was not attributable completely to his age, and held that "it is not claimant's burden to negative all possible non-occupational causes of his injury." *Id.* at ____, 239 S.E.2d at 127.

From this survey of our case law and the plain language of the statute, it is beyond dispute that West Virginia's Occupational Disease Statute, W.Va. Code § 23-4-1 provides coverage for each new occupational disease as medical

science verifies it and establishes it as such, without the need for special legislative recognition by addition to the scheduled diseases.

Since the 1949 amendment there has been a growing recognition in the area of occupational disease that there is a causal relationship between the inhalation of asbestos dust and the development of cancer, particularly lung cancer. In the past twenty years it has become obvious to medical researchers that exposure to asbestos is associated with neoplastic disease of the lungs; that is, the abnormal development of tumors. There is also some indication in the medical literature that adenocarcinoma is the predominant cell type of lung cancer associated with asbestos exposure. *See, e.g.*, Hasan, Nash, & Kazemi, *Asbestos Exposure and Related Neoplasia*, 65 Am. J. of Med. 649 (1978). There are also studies indicating the degree of increased risk of lung cancer may depend on the type of fiber, and the duration and level of exposure. *See, e.g.*, Weill, Hughes, & Waggenspack, *Influence of Dose and Fiber Type on Respiratory Malignancy Risk in Asbestos Cement Manufacturing*, 120 Am. Rev. of Respiratory Disease 345 (1979); *see generally, IARC Working Group on the Evaluation of the Carcinogenic Risk of Chemicals to Man: Asbestos*, 14 Int'l. Agency for Research on Cancer Monographs 1106 (1977).

Other courts that have had occasion to consider the compensability of lung cancer as an occupational disease have held that lung cancer can constitute an occupational disease, although it exists in the general public. *See, e.g., Utter v. Asten-Hill Manufacturing Co.*, 453 Pa. 401, 309 A.2d 583 (1973); (medical testimony indicating the location of the lung cancer is material in ascertaining the etiology of the disease). *Bolger v. Criss Anderson Roofing Company, Inc.*, 112 N.J. Super. 383, 271 A.2d 451 (1970); *McCallister v. Workmen's Compensation Appeal Board*, 71 Cal.Rptr. 697, 69 Cal.2d 488, 445 P.2d 313 (1968); *Caudle-Hyatt, Inc. v. Mixon*, 260 S.E.2d 193 (Va. 1979).

Despite the current state of the law, however, the Attorney General contends that by the terms of the statute lung cancer is an ordinary disease of life that can never be

an occupational disease except where there is proof of an intervening or intermediate occupational disease such as asbestosis. Stated differently, it is argued that the deceased employee's lung cancer cannot have followed "as an incident of [an] occupational disease", because there was no occupational disease present in this case. Employer's counsel also argues that the claimant in this case has the burden of proving the actual or exclusive cause of her deceased husband's lung cancer was the exposure to asbestos dust during the course of employment. On this legal theory, they argue that the claimant must prove that the deceased employee's lung cancer was not, in fact, caused by cigarette smoking or other possible non-occupational causes. We disagree. These contentions are not supported by the spirit, purpose or language of the statute or by our case law.

By the terms of the statute, an ordinary disease of life to which the general public is exposed outside of employment can be held compensable "when it follows as an incident of an occupational disease as defined in this chapter." An occupational disease is defined for the purposes of the Workmen's Compensation Act as "a disease incurred in the course of and resulting from employment." The statute goes on to provide when a disease other than occupational pneumoconiosis shall be deemed to have been incurred in the course of or to have resulted from the employment. Basically, it must be apparent to the rational mind, considering all the circumstances, that the six criteria dealing primarily with causation have been satisfied. These six criteria make it clear that the occupational disease need not have been foreseen or expected before its contraction. It thus follows that if the claimant can establish the statutory criteria defining an occupational disease, the claim is to be held compensable. The standards set forth in the statute are the sole requirements for proving an occupational disease as defined in the Act. The decision in Syllabus point 1 of *Bannister v. State Workmen's Compensation Comm'r.*, 154 W. Va. 172, 174 S.E.2d 605 (1970) is not to be read as imposing any additional burden on the claimant beyond that contemplated by the language of the

statute. Our decision in *Myers, supra,* as well as other cases involving ordinary diseases of life, rejected the employer's intermediate disease argument.

The employer's argument on the burden of persuasion in an occupational disease case is also unavailing. First, this contention is not supported by the statutory language. W.Va. Code § 23-4-1 does not require a claimant to prove that the conditions of his employment were the exclusive or sole cause of the disease nor does it require the claimant to show that the disease is peculiar to one industry, work environment, or occupation. Although evidence pertaining to cigarette smoking may be relevant in determining whether the statutory standards have been met, the claimant need not negative all possible non-occupational causes of the disease. We rejected that argument in Syllabus Point 1 of *Myers v. State Workmen's Compensation Comm'r., supra,* where we held:

> A claimant in a workmen's compensation case must bear the burden of proving his claim but in doing so it is not necessary to prove to the exclusion of all else the casual connection between the injury and the employment. Syl. pt. 2, *Sowder v. State Workmen's Compensation Comm'r.,* 155 W.Va. 889, 189 S.E.2d 674 (1972).

The record in the instant case reveals substantial evidence that the decedent's work environment contributed to his death from lung cancer. For at least fifteen years the decedent was intermittently exposed, on a weekly basis, to asbestos. He did, indeed, die of adenocarcinoma, the cell type linked to lung cancer caused by asbestos. Hasan, Nash and Kazemi, *supra,* and a doctor testifying at the hearing stated that asbestos exposure contributed to the decedent's demise.

The difficulty in conceptualizing a theory for recovery based on occupational disease often springs from the fact that most occupational diseases involve a latency period: the time between exposure to a hazard and manifestation

of the disease.* *See,* Note, *Workmen's Compensation: The Cumulative Injury Doctrine,* 81 W. Va. L. Rev. 435 (1979). Unlike traumatic injuries, the causal connection for occupational diseases must be established by showing exposure at the workplace sufficient to cause the disease and that the disease actually resulted in the particular case. The standard for determining that connection is defined in W.Va. Code § 23-4-1, as whether the connection appears to the rational mind to meet the six factor test set out in the code. Whether a disease appears causally related to employment in the eyes of the rational mind will turn on the state of current scientific knowledge. *Utter v. Asten-Hill Manufacturing Co.,* 453 Pa. 401, 309 A.2d 583 (1973).

Indeed, the state of scientific knowledge pertaining to this case is such that the Surgeon General of the United States has officially advised medical practioners throughout the country that exposure to asbestos for as little as one month may result in disease twenty years later. Richmond, J.B., 13 Clinical Toxicology 641 (1978); *see also,* Selikoff, Hammond and Seidman, "Cancer Risks of Insulation Workers in the United States" in *Biological Effects of Asbestos,* 209 (Bogouski, P.; Gilson, J.G.; Timbrill, V.; eds. 1973).

In the case before us, one doctor testified that recent studies showed the causal connection between exposure and the disease to be clear. The doctor, supported by the researchers and authors of these studies (all presumably of rational mind), found a causal connection here. Thus, we are able to say that the evidence before the Commissioner was sufficient to warrant a finding that asbestos caused cancer is a compensable disease under our occupational disease statute. If studies and research clearly link a disease to a particular hazard of a workplace, a prima facie

---

* In asbestos related claims the courts have recognized the latency period factor and have held that insurance companies carrying the risk at the time of exposure are responsible to defend and indemnify an employer in subsequently brought claims even though the insurer no longer carries the risk. *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* 451 F. Supp. 1230 (E.D. Mich. 1978), *aff'd,* Nos. 781322-26 (6th Cir. Oct. 21, 1980) (petition for rehearing pending).

case of causation arises upon a showing that the claimant was exposed to the hazard and is suffering from the disease to which it is connected. Medical evidence and scientific data showing this causal connection must not be disregarded. This is particularly so in this case. We cannot treat the evidence herein lightly.

For the foregoing reasons, the March 27, 1980, order of the Appeal Board is reversed. The case is remanded with directions that the lung cancer claim be considered under the standards of W.Va. Code § 23-4-1. It.is further ordered that the Court's ruling be certified to the Appeal Board and the Workmen's Compensation Commissioner pursuant to the provisions of W.Va. Code § 23-5-4.

*Reversed and remanded with directions.*