IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**November 15, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER ADAMS,**
**Claimant Below, Petitioner**

**vs.)**   **No. 22-ICA-16**      (JCN: 2022004606)

**UNITED PARCEL SERVICE, INC.,**
**Employer Below, Respondent**

#### MEMORANDUM DECISION

Petitioner Christopher Adams appeals the July 13, 2022, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent United Parcel Service, Inc. ("UPS") filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the September 7, 2021, order of the claim administrator finding that Mr. Adams did not sustain carpal tunnel syndrome ("CTS") in the course of and resulting from his employment.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Adams has been employed by UPS in various positions since March 1991. On April 20, 2020, he sustained an injury to his left shoulder while he was working as a feeder driver. On that date, he was unhooking a dolly trailer from a hitch and felt a sharp, stabbing pain in his mid-thoracic and lumbar spine and throughout his neck and left shoulder. He stopped working immediately after the injury and sought treatment. He was diagnosed with a left shoulder joint dissociation, strain of the left biceps tendon, and a cervical sprain/strain injury. He was treated by chiropractor Michael Kominsky, D.C., underwent an MRI of the left shoulder and cervical spine on June 27, 2020, and subsequently came under the care of

---

[1] Petitioner is represented by Reginald D. Henry, Esq. Respondent is represented by Jeffrey B. Brannon, Esq.

John Jasko, M.D., an orthopedic surgeon, who performed surgery to repair a tear in the cartilage of his left shoulder joint.[2]

Mr. Adams testified that after surgery, he continued to have a constant burning and tingling sensation that ran from the base of his neck to his fingertips on both hands. EMG/nerve conduction studies showed mild right-sided ulnar neuropathy at the elbow and mild left-sided CTS. Dr. Kominsky completed a workers' compensation report of occupational disease for CTS, opining that the conditions of CTS of the left upper limb and lesion of the ulnar nerve of the right upper limb were the direct result of an occupational disease from chronic repetitive flexion and extension of the wrists. The workers' compensation report reflected that Mr. Adams' last exposure was April 20, 2020, and that he had stopped working on April 21, 2020.

Mr. Adams was deposed on January 27, 2022, and testified about a number of physical tasks he routinely performed at work that he described as repetitive and forceful, including using hand cranks on trailers; cranking legs up and down; wrapping and twisting chains; pulling straps, light cords, chains, and air hoses; driving trucks using manual steering and manual transmissions; and unloading, sorting, and picking up packages.[3] He also testified that he had no symptoms of CTS in his hands prior to the incident of April 20, 2020, and that despite not working since that date, he developed symptoms that progressed over time. He stated that he had numbness, tingling, ice cold sensations, burning sensations, and shooting pulsations that ran down his arms through all ten fingers on both hands. He also related the symptoms in his hands to his back and neck and said that he had shooting sensations that ran up and down his spine and could cause headaches, blurred vision, and dizziness, in addition to the loss of sensation in his hands.

On September 7, 2021, the claim administrator denied Mr. Adams' application for CTS benefits. Mr. Adams protested. In response, on March 7, 2022, David Soulsby, M.D. reviewed Mr. Adams' medical records on behalf of UPS and rendered an opinion regarding the CTS claim, concluding that Mr. Adams does not have CTS. Dr. Soulsby explained that CTS is primarily a clinical diagnosis which requires both characteristic symptoms and physical examination findings. Dr. Soulsby opined that Dr. Kominsky's diagnosis appeared to rely on the EMG study criteria alone, which can be abnormal in a significant percentage of the population. Dr. Soulsby cited a study finding that as many as 46% of

---

[2] Petitioner filed a separate workers' compensation claim related to the April 20, 2020, occupational injury that is not at issue in this appeal.

[3] The Board of Review failed to make detailed findings of fact in its order regarding Mr. Adams' testimony describing the repetitive and forceful physical tasks he performed with his hands and wrists during his employment. Nevertheless, this Court has reviewed the deposition testimony and determines that it supports the Board's ultimate conclusion.

patients had a false positive electrodiagnostic test for CTS. Moreover, he noted that Mr. Adams' records did not show a typical history of CTS symptoms or consistent physical findings. For example, Mr. Adams reported symptoms in all five digits in both hands, which is not consistent with CTS.  Furthermore, CTS typically has an insidious onset from repetitive motion or overuse, not from a single specific work injury as was experienced in this claim.  In addition, if the CTS symptoms were from an occupational repetitive motion or overuse, they would be expected to improve when the provocative work was removed. In contrast, Mr. Adams was not working when his symptoms began, and his symptoms continued to progress and worsen while he remained off work. Mr. Adams' medical records documented a history of degenerative disc disease in the cervical spine which, according to radiographic reports, was severe enough to cause foraminal stenosis sufficient to explain the presence of numbness and tingling in the upper extremities. Finally, Dr. Soulsby noted that even if Mr. Adams did have CTS, he had an additional risk factor for developing it that was not work-related, his morbid obesity. Based on epidemiological studies, Dr. Soulsby concluded that there is a 32% probability that Mr. Adams may have CTS because of his obesity.

UPS submitted into the record, among other documents, Dr. Soulsby's written report and the January 27, 2022, deposition transcript in which Mr. Adams admitted that he developed CTS symptoms only after he stopped working. By order dated July 13, 2022, the Board affirmed the claim administrator's decision that Mr. Adams had not established that he sustained the condition of CTS in the course of and resulting from his employment. It is from this order that Mr. Adams now appeals.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-12a(b) (2022), as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1)　　In violation of statutory provisions;
> (2)　　In excess of the statutory authority or jurisdiction of the Board of Review;
> (3)　　Made upon unlawful procedures;
> (4)　　Affected by other error of law;
> (5)　　Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

3

(6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Mr. Adams argues that the Board's decision is clearly wrong and should be reversed because a preponderance of the evidence establishes that his bilateral CTS is directly related to, and developed in the course of and resulting from, his employment. Mr. Adams submits that he underwent appropriate diagnostic testing which resulted in a diagnosis of bilateral CTS. He claims he testified credibly at his deposition regarding the repetitive and forceful use of his hands while performing his job duties for UPS. He discounts the Board's reliance on his deposition testimony characterizing Dr. Patel's statement that "the majority of his problems were coming from the C5-C6 region of his neck." Mr. Adams qualified his characterization by acknowledging that he is not a doctor. He asserts that he is not required to prove that the conditions of his employment were the exclusive or sole cause of his CTS, or that CTS is peculiar to one industry, work environment, or occupation. *See Powell v. State Workmen's Comp. Comm'r*, 166 W. Va. 327, 273 S.E.2d 832 (1980). Finally, Mr. Adams discredits Dr. Soulsby's report because Dr. Soulsby made contradictory statements, first stating that Mr. Adams doesn't have CTS, then stating that his CTS was likely due to his obesity.

Upon review of the record, this Court finds no error or abuse of discretion in the Board's analysis or conclusions. The workers' compensation treatment guidelines for CTS set forth a series of considerations to be made in determining whether CTS is work-related, including a careful review of the claim history, physical examination, and appropriate diagnostic tests and examinations. W. Va. Code R. § 85-20-41.1 (2006). The guidelines include an assessment of diagnostic accuracy, possible confounding conditions, work setting, and the duration of the symptoms when determining causation, keeping in mind that a high prevalence of concurrent medical conditions can cause CTS in persons without regard to any particular occupation. W. Va. Code R. §§ 85-20-41.2 to 85-20-41.5 (2006). West Virginia Code § 23-4-1(f) (2021) sets forth the criteria that must be met to establish an occupational disease, such as CTS. The disease must be incurred in the course of and resulting from employment, and cannot be an ordinary disease of life to which the general public is exposed outside of employment unless it is apparent:

(1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease, (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, (3) that it can be fairly traced to the employment as the proximate cause, (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment, (5) that it is incidental to the character of the business and not independent of the relation of an employer and employee, and (6) that it

4

must appear to have had its origin in the risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

*Id*. In the instant case, the Board found that the evidence did not establish a claim for occupational CTS using the above criteria. Mr. Adams testified that he did not work after April 20, 2020, and that he had no symptoms in his hands during the preceding twenty-nine years of employment with UPS. The medical records submitted showed no previous signs, symptoms, or diagnoses of CTS before the April 20, 2020, injury. Mr. Adams acknowledged that his treating physician, Dr. Patel, "emphasized" that most of his problems were coming from his cervical spine, which correlates with Dr. Soulsby's finding that his degenerative disc condition in his cervical spine was severe enough to cause the numbness and tingling Mr. Adams was experiencing in his arms and hands. Mr. Adams also testified that his symptoms were worsening with time and involved all ten fingers, neither of which is consistent with a typical symptom of CTS.

Finally, despite Mr. Adams' contention, we find that Dr. Soulsby's opinions were not contradictory, and clearly state that Mr. Adams did not meet the diagnostic criteria for CTS related to his employment. Dr. Soulsby opined that if Mr. Adams had CTS caused by repetitive tasks performed at work, one would expect his symptoms to improve while he was not working. The fact that Mr. Adams' symptoms continued to worsen after he stopped working weighs heavily against him establishing an occupational disease pursuant to the criteria outlined in West Virginia Code § 23-4-1(f). Based on the foregoing, we find that Mr. Adams has failed to demonstrate that the Board was clearly wrong in affirming the claim administrator's order finding that he did not sustain carpal tunnel syndrome in the course of and resulting from his employment.

Accordingly, we affirm.

Affirmed.

**ISSUED:** November 15, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen