IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
September 26, 2023

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CALVIN KIRKBRIDE, JR.,**
**Claimant Below, Petitioner**

**vs.) No. 23-ICA-146**      (JCN: 2020000760; 2020012575)

**BALL METAL FOOD CONTAINER CORP.,**
**UNITED STATES CAN CO., and**
**BALL METALPACK AEROSOL CONTAINER,**
**Employers Below, Respondents**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER,**
**IN ITS CAPACITY AS ADMINISTRATOR OF THE OLD FUND,**
**Respondent**

### MEMORANDUM DECISION

Petitioner Calvin Kirkbride, Jr. appeals the March 9, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondents Ball Metal Food Container Corp., ("Ball") and West Virginia Offices of the Insurance Commissioner, in its capacity as administrator of the Old Fund ("WVOIC") filed responses.[1] Mr. Kirkbride did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied Mr. Kirkbride's application for benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Kirkbride was employed by Ball from 1967 to 1997 with various job titles over those thirty years. He reported that he was exposed on a daily basis to paints, solvents, inks, and mixtures that contained methyl ethyl ketone ("MEK"), methyl isobutyl ketone,

---

[1] Mr. Kirkbride is represented by R. Dean Hartley, Esq. Ball is represented by James W. Heslep, Esq. WVOIC is represented by Sean Harter, Esq. United States Can Co. and Ball Metalpack Aerosol Container did not appear.

perchloroethylene ("PERC"), benzene, toluene, xylene, mixed xylenes, trichloroethylene ("TCE"), as well as products that contained those chemicals and substances.[2]

Mr. Kirkbride was first seen by Vijayalakshmi Ragoor, M.D., a neurologist, on February 6, 2018. Mr. Kirkbride complained of right-hand tremors, slurred speech, and occasional lightheadedness. Dr. Ragoor opined that Mr. Kirkbride's condition was not related to a work injury or disease. Mr. Kirkbride underwent testing to determine the cause of his symptoms and a DaTscan with SPECT imaging performed on August 13, 2018, confirmed a diagnosis of Parkinson's disease ("PD.")

On July 2, 2019, Mr. Kirkbride filed an application for workers' compensation benefits, claiming that he developed PD as a result of exposure during his employment at Ball.[3] On August 20, 2019, the claim administrator requested more information from Mr. Kirkbride in order to make a compensability determination. Thereafter, the claim administrator issued an order dated November 1, 2019, which rejected Mr. Kirkbride's application for benefits as no additional information in support of the application for benefits was received. On January 22, 2020, the claim administrator for the Old Fund issued an order rejecting Mr. Kirkbride's application for benefits. Mr. Kirkbride protested both orders, and the protests were consolidated at the Board of Review.

Christopher Martin, D.O., issued a report dated September 17, 2020, after performing a record review. Dr. Martin was not provided any of Mr. Kirkbride's medical records to review. Dr. Martin noted that most PD cases are idiopathic, meaning that the cause is unknown. Dr. Martin also noted that while some studies have shown positive associations between occupational exposures and PD, other studies do not show a correlation. Dr. Martin was unable to conclude with a reasonable degree of medical certainty that Mr. Kirkbride's diagnosis of PD was related to his occupational exposures.

On June 14, 2021, Briana De Miranda, M.D., a neurologist, issued a report. Dr. De Miranda opined that environmental factors heavily influence the risk of PD. Dr. De Miranda noted that recent studies found that sustained exposure to chlorinated solvents, particularly TCE, can lead to the development of PD. Dr. De Miranda did not comment specifically on whether Mr. Kirkbride's exposure caused or increased his risk for PD.

---

[2] Mr. Kirkbride signed an affidavit, dated June 29, 2019, regarding his job titles and exposure at Ball. Several former coworkers also provided affidavits confirming their similar workplace exposure to these chemicals. All of these former coworkers filed similar workers' compensation claims for occupational diseases. One former coworker also filed a claim for occupational Parkinson's disease.

[3] Although he had previously indicated that Mr. Kirkbride's PD was not occupational, Dr. Ragoor indicated on the physician's portion of the application that the diagnosis of PD was occupational.

Mr. Kirkbride submitted two articles into evidence at the Board.[4] The Hageman article indicated that a study found a positive link between occupational exposure to solvents and PD. The Oliver article noted that there is no consensus on the association between solvents and PD; however, the authors found a positive association between hydrocarbon exposure and PD.

A record review report was issued by Michael Sellman, M.D., a neurologist, on September 11, 2022. Dr. Sellman opined that based on the record, he could not link Mr. Kirkbride's PD to his occupational exposure.

On March 9, 2023, the Board issued an order affirming the claim administrator's order, which rejected Mr. Kirkbride's application for benefits. The Board found that Mr. Kirkbride had not established a causal connection between his occupational exposures and his PD diagnosis. Mr. Kirkbride now protests the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

---

[4] Gerard Hageman et al., *Parkinsonism, pyramidal signs, polyneuropathy, and cognitive decline after long-term occupational solvent exposure*, 246 J. Neurol. 198, 198-206 (1999); and Oliver Palin, et al., *Systematic review and meta-analysis of hydrocarbon exposure and the risk of Parkinson's disease*, 21 Parkinsonism Relat Disord. 243, 243-48 (2015).

On appeal, Mr. Kirkbride argues that the Supreme Court of Appeals of West Virginia held that when research clearly links a disease to workplace hazard a prima facie case of causation arises upon a showing that the claimant was exposed to the hazard and is suffering from the disease to which it is connected. *See Casdorph v. W. Va. Office Ins. Comm'r*, 225 W.Va. 94, 100, 690 S.E.2d 102, 108 (2009) citing Syl. Pt. 5, *Powell v. State Workmen's Comp. Comm'r*, 166 W.Va. 327, 273 S.E.2d 832 (1980). Mr. Kirkbride further argues that he experienced frequent and intense exposure to chemicals directly linked to PD. We disagree.

West Virginia Code §23-4-1(f) (2021) provides:

> For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment is compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction: Provided, That compensation is not payable for an occupational disease or death resulting from the disease unless the employee has been exposed to the hazards of the disease in the State of West Virginia over a continuous period that is determined to be sufficient, by rule of the board of managers, for the disease to have occurred in the course of and resulting from the employee's employment.

Here, the Board considered the six factors under West Virginia Code §23-4-1(f) and found that Mr. Kirkbride failed to meet the requirements of the first two factors - i.e., causation and exposure. The Board noted that Dr. De Miranda did not comment specifically on Mr. Kirkbride's occupational exposures. The Board found that the evidence does not support a finding that Mr. Kirkbride's occupational exposures were sufficient to cause PD. The Board also found that Mr. Kirkbride's medical evidence did not establish a prima facie

4

case of causation under *Powell*. The Board further found that there were multiple medical opinions, those of Drs. Martin and Sellman, finding no causal connection between Mr. Kirkbride's occupational exposures and his development of PD.

Upon review, we conclude that the Board was not clearly wrong in determining that Mr. Kirkbride's medical evidence and evidence of exposure were not sufficient to meet the requirements under §23-4-1(f). Further, the Board was not clearly wrong in finding that Mr. Kirkbride has not established that his PD was caused by his occupational exposures.

Our review is deferential to the Board. West Virginia Code § 23-5-12a(b) sets forth the same standard of review as was previously required of the Board when it reviewed decisions by the Office of Judges per West Virginia Code § 23-5-12 before the 2021 statutory amendments became effective. In considering West Virginia Code § 23-5-12, the Supreme Court of Appeals of West Virginia stated that the Board was required to accord deference to the decisions by the Office of Judges. *See Conley v. Workers' Comp. Div.*, 199 W. Va. 196, 203, 483 S.E.2d 542, 549 (1997).

Accordingly, we affirm the Board's March 9, 2023, order.

Affirmed.

**ISSUED:** September 26, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating

5