IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

WANDA COLES,
DEPENDENT OF KERMIT COLES (DECEASED)
Claimant below, Petitioner

FILED
November 1, 2023

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 23-ICA-81     (JCN: 2021006800)**

CENTURY ALUMINUM OF WEST VIRGINIA,
Employer below, Respondent

## MEMORANDUM DECISION

Petitioner Wanda Coles , widow of decedent Kermit Coles , appeals the February 2, 2023, order of the West Virginia Workers' Compensation Board of Review ("Board"). Respondent Century Aluminum of West Virginia ("Century") filed a timely response.[1] Petitioner did not file a reply.

The issue on appeal is whether the Board erred in affirming the claim administrator's order denying Ms. Coles' claim for dependent's benefits. The BOR found that Ms. Coles failed to establish a causal connection between Mr. Coles' bladder cancer and his employment.  Ms. Coles now appeals the Board's order.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' briefs, the record on appeal, the oral arguments of counsel and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's February 2, 2023, order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Coles died on January 14, 2020, from metastatic bladder cancer. From 1988 through 2007, he was employed by Century, as a millwright, welder, and maintenance worker. On April 23, 2020, Ms. Coles filed an application for dependent's benefits, alleging that Mr. Coles' bladder cancer was caused by his exposure to fumes associated with aluminum production during his employment at Century.

Mr. Coles' son, Patrick Coles, drafted two affidavits, one dated March 24, 2021, and the other dated May 4, 2021, in which he asserts that he worked at Century with his father for two years and observed his father working in the "pot room" while metals were being melted. Patrick Coles also alleged that his father used N-95 dust masks and half face

---

[1] Ms. Coles is represented by John H. Skaggs, Esq. Century is represented by T. Jonathan Cook, Esq.

masks with paper filters but acknowledged that the masks were not used during breaks or when entering and leaving the building.

On April 21, 2021, Charles L. Werntz, D.O., submitted a report after reviewing Mr. Coles' medical records. Dr. Werntz noted that Mr. Coles had a 42-year history of cigarette smoking, which Dr. Wentz opined could contribute to the development of bladder cancer. Dr. Werntz reviewed a report from the International Agency for Research on Cancer ("IARC"), which found that working in aluminum production was a known human carcinogen. An article published in 2014 by Graham W. Gibbs, Ph.D. and France Labreche, Ph.D. titled Cancer Risks in Aluminum Reduction Plant Workers, A Review was also reviewed by Dr. Werntz. Per Dr. Wentz, the article indicated that aluminum production workers had an increased risk of bladder cancer. The article concluded that the Soderberg aluminum production process was associated with an increased risk of lung and bladder cancer in Canada and Norway. The authors also concluded that an increased risk was noted even after adjustment for smoking histories. Dr. Werntz opined that Mr. Coles' development of bladder cancer was "significantly contributed to" by his work at Century and that Mr. Coles would have been less likely to develop bladder cancer had it not been for his exposure during his employment.

On November 21, 2022, Jennifer Lultschik, M.D., issued a report based on her record review. Dr. Lultschik considered the 2014 Gibbs article and found that the increased risk of bladder cancer discussed in that article was primarily associated with the Soderberg process used in Canada and Norway. She noted that there was no information in the record regarding the type of process used at Century during Mr. Coles' employment and that the article found that bladder cancer caused by aluminum production was detected at statistically nonsignificant levels in the United States. Dr. Lultschik also noted that tobacco smoking accounts for 50-65% of cases of bladder cancer and found that Mr. Coles had a 42-year smoking history that placed him at a higher risk for bladder cancer. Ultimately, Dr. Lultschik opined that Mr. Coles' bladder cancer was not associated with his employment at Century.

On February 2, 2023, the Board issued an order affirming the claim administrator's order, which denied Ms. Coles' application for dependent's benefits after finding that she failed to establish that Mr. Coles' bladder cancer was caused by his employment at Century. The BOR found Dr. Lultschik's report to be more persuasive than that of Dr. Werntz. Ms. Coles now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

2

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1)     In violation of statutory provisions;
(2)     In excess of the statutory authority or jurisdiction of the Board of Review;
(3)     Made upon unlawful procedures;
(4)     Affected by other error of law;
(5)     Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E. 2d 916, 921 (W. Va. Ct. App. 2022).

In reviewing decisions by administrative agencies, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." *Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E. 2d 916, 921 (W. Va. Ct. App. 2022)(citing Syl Pt. 3, *In Re Queen*, 196 W.Va. 442, 473 S.E. 2d 483 (1996)). An appellate court will not reweigh the evidence as presented to the Board. *W. Virginia Div. of Highways v. Scott*, No. 22-ICA-135, 2023 WL 2365786, at \*4 (W. Va. Ct. App. Mar. 6, 2023) ("We are not in a position to reweigh said evidence at the appellate stage"). "This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong.*" Plummer v. Workers Comp. Div.*, 209 W. Va. 710, 712, 551 S.E.2d 46, 48 (2001)(citing Syl. Pt., *Rushman v. Lewis,* 173 W.Va. 149, 313 S.E.2d 426 (1984)).

On appeal, Ms. Coles alleges three points of error. First, Ms. Coles asserts the Board erred in finding that she had not met her burden of proof to show that her husband's death was caused by an occupational disease, where she offered evidence of exposure, an expert opinion, and supporting scientific studies of the link between exposure to polycyclic aromatic hydrocarbons and bladder cancer under *Bradford v. Workers' Comp Comm'r*, Syl Pt. 3, 185 W.Va. 434, 408 S.E.2d 13 (1991). Second, Ms. Coles argues that the Board erred in failing to properly apply the holding in *Powell v. State Workmens' Comp. Comm'r*, 166 W. Va. 327, 273 S.E.2d 832 (1980) , which does not require her to prove the conditions of Mr. Cole's employment were the exclusive cause of the disease nor does it require her to show that the disease is peculiar to one industry, work environment, or occupation. Lastly, Ms. Coles argues that the Board erred in finding that Mr. Cole's exposure was limited without supporting evidence and was clearly wrong in light of the evidence offered on the

3

record. After a review of the record, we find no error. The Board correctly applied the law under *Powell* to the claim made by Ms. Coles and was not clearly wrong in affirming the claim administrator's denial for compensability.

West Virginia Code § 23-4-1(f) (2021), provides that:

For the purposes of this chapter, occupational disease means a disease incurred in the course of and resulting from employment. No ordinary disease of life to which the general public is exposed outside of the employment is compensable except when it follows as an incident of occupational disease as defined in this chapter. Except in the case of occupational pneumoconiosis, a disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction: *Provided*, That compensation is not payable for an occupational disease or death resulting from the disease unless the employee has been exposed to the hazards of the disease in the State of West Virginia over a continuous period that is determined to be sufficient, by rule of the board of managers, for the disease to have occurred in the course of and resulting from the employee's employment. An application for benefits on account of an occupational disease shall set forth the name of the employer or employers and the time worked for each. The commission may allocate to and divide any charges resulting from the claim among the employers by whom the claimant was employed. The allocation shall be based upon the time and degree of exposure with each employer.

"W. Va. Code § 23-4-1 does not require a claimant to prove that the conditions of his employment were the exclusive or sole cause of the disease, nor does it require the claimant to show that the disease is peculiar to one industry, work environment, or occupation." Syl. Pt. 3, *Powell v. State Workmen's Comp. Comm'r*, 166 W. Va. 327, 273 S.E.2d 832 (1980).

In order to prove her claim for occupational disease, Ms. Coles had to show, by a preponderance of the evidence, that her husband contracted the disease in the course of and

as a result of his employment with Century. After weighing the evidence and testimony in this matter, the Board determined that Ms. Coles failed to meet that burden. We agree.

Upon review, we find there is no indication, from the medical records prior to Mr. Coles' death, that any of his treating physicians associated his cancer diagnosis with his employment. Mr. Coles died in January of 2020. It was not until April of 2021, when Dr. Wentz opined that Mr. Coles' development of bladder cancer was "significantly contributed to" by his work at Century. Dr. Wentz based his opinion on the report from the IARC and the article by Gibbs and Labreche, linking aluminum production workers to an increased risk of bladder cancer.[2] However, the Board found the opinion of Dr. Lultschik to be more persuasive. Dr. Lultschik opined that Mr. Coles' bladder cancer was not associated with his employment. Particularly, Dr. Lultschik determined that the Gibbs and Labreche article associated the causal link between bladder cancer and the Soderberg process of aluminum production used in Canada and Norway, and that bladder cancer caused by aluminum production was detected at statistically nonsignificant levels in the United States. The record is devoid of information as to which type of process was used at Century during Mr. Coles' employment.

As stated in *Powell*, an ordinary disease of life which occurs in the general public requires proof of the six factors outlined in West Virginia Code § 23-4-1(f). 166 W. Va. at 331, 273 S.E.2d at 834. Absent a determination as to the process used in Century's aluminum production, we find that there is not sufficient evidence to compel a finding of a direct causal connection between the working conditions and Mr. Coles' bladder cancer. The totality of the evidence also raises the question of whether Mr. Coles' cancer can be fairly traced to his employment as the proximate cause. Based on Dr. Lultschik's report, it is unclear whether Mr. Coles' bladder cancer had its origin in a risk connected with his employment. Ms. Coles is correct in her arguments that she is not required to prove the conditions of Mr. Coles' employment were the exclusive cause of his bladder cancer; however, she is required to establish the six factors contained West Virginia Code § 23-4-1(f). Here, the Board applied the appropriate standard and Ms. Coles failed to satisfy her burden of proof by a preponderance of the evidence.

Ms. Coles further argues that claim administrator's order was insufficient in that it failed to place her on notice that exposure would be at issue in this claim. We remind Ms. Coles that the analysis for non-occupational pneumoconiosis occupational diseases under West Virginia Code § 23-4-1(f), requires a six-step analysis which expressly includes determination of whether the claimant has the requisite exposure. Therefore, we find no merit in her allegations regarding lack of notice when an essential element to compensability is exposure.

---

[2] While the IARC report was referenced in Dr. Wentz's report, the Board noted that said report was not submitted for full consideration before the Board.

5

Accordingly, based on the foregoing, we affirm the Board's February 2, 2023, order.

Affirmed.

**ISSUED:** November 1, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge Thomas E. Scarr