# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JERRY BRAGG,**
**Claimant Below, Petitioner**

**FILED**
**December 15, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-296**        (JCN: 2022021188)

**APPALACHIAN RESOURCE COMPANY, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jerry Bragg appeals the June 12, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Appalachian Resource Company, LLC ("ARC") filed a response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order rejecting the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 20, 2018, James Endicott, M.D., diagnosed Mr. Bragg with left carpal tunnel syndrome ("CTS") and left ulnar nerve entrapment. Mr. Bragg continued to treat with Dr. Endicott for left CTS and left ulnar nerve entrapment at the elbow in 2020. On October 9, 2020, Mr. Bragg underwent an EMG study of both arms, which revealed bilateral median mononeuropathy at the wrist, ulnar mononeuropathy at the level of the elbow on the right, and no evidence of radiculopathy, plexopathy, neuropathy, and found no additional sites of nerve entrapment.

Mr. Bragg treated with Sarah Whitfield, PA-C, on January 28, 2021, and complained of pain and numbness in his hands and arms. Ms. Whitfield diagnosed bilateral CTS and right cubital tunnel syndrome, and she ordered injections and noted that if Mr. Bragg's symptoms did not improve, he would be offered surgery. Mr. Bragg returned to Ms. Whitfield on April 30, 2021, and complained of decreased strength in his hands. Ms. Whitfield offered surgery, to which Mr. Bragg agreed. Alan R. Koester, M.D., performed an open decompression of the median nerve at the carpal tunnel and decompression of the

---

[1] Mr. Bragg is represented by Edwin H. Pancake, Esq. ARC is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq.

1

ulnar nerve at the elbow with anterior subcutaneous transposition on Mr. Bragg's left upper extremity on July 29, 2021.

On August 19, 2021, Mr. Bragg was seen by Ms. Whitfield, who noted that his paresthesia was improving since his surgery. In September of 2021, Mr. Bragg indicated that the paresthesia in his right hand was making it difficult for him to complete work duties and that he wished to proceed with surgery in the right hand as well. Mr. Bragg was released to return to work at full duty.

Mr. Bragg completed an Employees' and Physicians' Report of Occupational Injury or Disease ("WC-1") form on November 18, 2021. Mr. Bragg indicated that he injured both his hands, wrists, and elbows while working as a miner operator/mechanic. Alan Koester, M.D., Mr. Bragg's surgeon, completed the physician's section of the form on a later date. Dr. Koester diagnosed unspecified carpal tunnel syndrome of an upper limb and checked a box to indicate that the condition was a direct result of occupational injury. On December 14, 2021, Mr. Bragg returned to Ms. Whitfield and reported that his symptoms of paresthesia in his left hand had completely resolved after his surgery. He was scheduled to undergo surgery on his right hand in February of 2022.

On April 25, 2022, Mr. Bragg underwent an independent medical evaluation ("IME") performed by Prasadarao Mukkamala, M.D. Dr. Mukkamala noted that Mr. Bragg was employed by ARC as a high wall miner operator and that Mr. Bragg reported that his duties mostly involved operating the machine via a computer, although he also worked as a mechanic on the machine. Dr. Mukkamala further noted that he reviewed the job description for a high wall miner operator. After an examination of Mr. Bragg and a review of the records, Dr. Mukkamala concluded that although Mr. Bragg had CTS and cubital tunnel syndrome, the conditions were not causally related to his occupational activities. According to Dr. Mukkamala, the duties of a high wall machine operator did not involve the degree of repetition and force required to cause CTS or cubital tunnel syndrome.[2] Dr. Mukkamala noted that Mr. Bragg's body mass index placed him in the obese category, which was "a very significant nonoccupational risk factor" for developing CTS. Given that Mr. Bragg had no occupational risk factor for developing CTS or cubital tunnel syndrome, but did have a significant nonoccupational risk factor, Dr. Mukkamala opined that Mr. Bragg's CTS and cubital tunnel syndrome diagnoses were not causally related to his occupation.

---

[2] Dr. Mukkamala actually referred to the duties of a "long wall machine operator" instead of a "high wall miner operator." However, because Dr. Mukkamala had referenced Mr. Bragg's correct job title—high wall miner operator—at least twice throughout the report, including when stating that he reviewed the job description for Mr. Bragg, the Board found that this incorrect reference was a simple clerical error.

On April 26, 2022, the claim administrator rejected the claim for bilateral CTS and bilateral cubital tunnel syndrome. Mr. Bragg protested the order to the Board. In the ensuing litigation, ARC introduced a job description for the title of high wall miner operator. The description indicated that the employee is responsible for the operation of the high wall miner, which includes operating the mining machine to gather coal and convey it to floors or shuttle cars; entering commands, using computer terminals; activating controls; repositioning the machine; listening to and observing the machine for malfunctions; operating a rock truck; shoveling debris and "pulling pins;" and all other duties assigned by the Superintendent or General Manager.

Mr. Bragg testified via deposition on January 6, 2023. Mr. Bragg testified that he had worked as an equipment operator/mechanic for several years and had done manual labor since graduating high school. Regarding the use of hand tools, Mr. Bragg stated "it's been impacts or help setting, holding one, you know, welding on something or beating something with a hammer." Mr. Bragg also testified that he used to weld for ten to twelve hours a day and that, more recently, he frequently used a two- and four-pound hammer. As for repetitive actions, Mr. Bragg stated that he used a computer mouse while running the miner machine. Mr. Bragg testified that he was 5'8-9" tall and weighed approximately 200 pounds. He denied any issues with hypothyroidism, alcohol abuse, rheumatoid arthritis, or any unusual postural abnormalities.

By order dated June 12, 2023, the Board affirmed the claim administrator's order rejecting the claim for CTS and bilateral cubital tunnel syndrome. Citing to West Virginia Code § 23-4-1 (2021)[3] and West Virginia Code of State Rules § 85-20-41 (2006), the Board found that Mr. Bragg failed to demonstrate that his CTS and cubital tunnel syndrome

---

[3] West Virginia Code § 23-4-1(f) provides, in part:

[An] occupational disease means a disease incurred in the course of and resulting from employment. . . . [A] disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

3

diagnoses were causally related to his occupational activities. The Board noted that, in completing the WC-1, Dr. Koester indicated that it was occupationally related but failed to provide any explanation as to Mr. Bragg's job duties or how they caused or contributed his CTS or cubital tunnel syndrome. The Board found that Dr. Mukkamala was the only physician of record who provided any opinion as to the causality of Mr. Bragg's CTS and cubital tunnel syndrome diagnoses and that he opined that the conditions were not causally related to Mr. Bragg's occupational activities. The Board further found that Dr. Mukkamala opined that Mr. Bragg's work activities did not pose any risk of a repetitive stress injury but that his obesity would have been a nonoccupational risk factor. The Board concluded that Dr. Mukkamala's opinion was reasonable and based upon the reliable evidence of record.

The Board noted that Mr. Bragg testified that his job duties included work as a mechanic and working with hand tools, but found that Mr. Bragg admitted in his testimony and statements to Dr. Mukkamala that most of his work included using a mouse on the computer to operate the machine. The Board found that the regulations set forth in West Virginia Code of State Rules § 85-20-41 et. seq., (2006) provide that studies had failed to show a relationship between normal clerical activities and CTS. The Board concluded that Mr. Bragg's testimony failed to establish any job duties that would have contributed to his developing CTS, such as awkward wrist positioning, significant grip force, or high force repetitive movements.

The Board concluded that Mr. Bragg failed to submit any medical opinion regarding a connection between his occupation and his CTS diagnosis, and Dr. Mukkamala opined that Mr. Bragg's job duties did not put him at risk of developing CTS. Accordingly, the Board affirmed the claim administrator's order rejecting the claim. Mr. Bragg now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Mr. Bragg argues that the Board erred in relying on the opinion of Dr. Mukkamala, the employer's paid expert, rather than his own treating physicians. According to Mr. Bragg, his physicians have significantly more experience with his condition, and Dr. Koester noted that Mr. Bragg's diagnosis was occupationally related. Mr. Bragg contends that the Board erroneously discounted Dr. Koester's opinion since the WC-1 form did not include a narrative report discussing Mr. Bragg's work duties and risk factors. Mr. Bragg argues that he is not required to have submitted a detailed medical report with his WC-1 form, and that the Board was wrong in seemingly requiring such a report. Moreover, Dr. Koester was aware of the nature of Mr. Bragg's work and attributed his diagnosis to his employment. At the very least, Mr. Bragg contends, the Board erred in not finding an equal amount of evidentiary weight regarding this protest and not adopting the position most favorable to Mr. Bragg. Mr. Bragg concludes that, in sum, the Board erroneously deferred to Dr. Mukkamala, whose opinion should not have been given controlling weight.

We disagree. Mr. Bragg has failed to demonstrate that the Board was clearly wrong in affirming the claim administrator's order rejecting the claim for CTS and cubital tunnel syndrome. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this high standard of review in mind, we are unable to conclude that the Board erred in finding that Mr. Bragg's CTS and cubital tunnel syndrome diagnoses were not compensable conditions.

While Mr. Bragg attempts to argue that the employer's expert, Dr. Mukkamala, should be given less evidentiary weight simply because ARC "handpicked" him to provide an opinion in the case, he fails to cite any authority supporting such an assertion. There is simply no basis for the assumption that because Dr. Mukkamala was hired by the employer to evaluate the claim, that his opinion is biased and, therefore, invalid. Indeed, Dr. Mukkamala was the only physician of record who provided any analysis of a causal connection, or lack thereof, between Mr. Bragg's diagnoses and his employment.

Mr. Bragg argues that Dr. Koester indicated on the form that the diagnosis code was occupationally related and that he was not required to also produce a detailed narrative report in support of his opinion. Although Mr. Bragg may not be required to produce a detailed narrative in support of his claim here, the Board weighed the report on which Dr. Koester merely checked a box to indicate that CTS and cubital tunnel syndrome are

occupational injuries (with no further analysis) against the thorough report of Dr. Mukkamala. When viewing Dr. Koester's WC-1 form in conjunction with Dr. Mukkamala's report, the Board found that Mr. Bragg failed to submit any medical evidence sufficient to rebut Dr. Mukkamala's opinion that Mr. Bragg's CTS diagnosis was unrelated to his occupational activities. As noted by the Supreme Court of Appeals of West Virginia in *Powell v. State Workmen's Compensation Commissioner*, 166 W. Va. 327, 336, 273 S.E.2d 832, 837 (1980), "[u]nlike traumatic injuries, the causal connection for occupational diseases must be established by showing exposure at the workplace sufficient to cause the disease and that the disease actually resulted in the particular case." Moreover, "[u]nder West Virginia Code of State Rules § 85-20-41.2, diagnostic accuracy, confounding conditions, work setting, and duration of symptoms are factors to be considered in assigning causality of carpal tunnel syndrome." *Kessinger v. W. Va. Parkways Econ. Dev.*, No. 11-1332, 2013 WL 2477257 at *1 (W. Va. June 6, 2013) (memorandum decision).

In sum, Dr. Mukkamala explained that Mr. Bragg largely operated the high wall miner machine via a computer mouse, which did not present an occupational risk factor, and that he had a significant nonoccupational risk factor, obesity, which more than likely caused or contributed to Mr. Bragg's diagnoses. In considering all these factors, we are unable to conclude that the Board was clearly wrong in the weight it assigned Dr. Mukkamala's report.

Accordingly, we find the evidence sufficient to support the Board's order affirming the claim administrator's order rejecting CTS and cubital tunnel syndrome as compensable conditions, and we give deference to its findings. *See W. Va. Off. of Ins. Comm'r v. Johns*, No. 21-0811, 2023 WL 3968686, at *3 (W. Va. June 13, 2023) (memorandum decision) ("This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review[.]").

For the foregoing reasons, we affirm the Board's June 12, 2023, order.

Affirmed.

**ISSUED:** December 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

6